**THOMPSON v. SMITH. (No. 339–3710.)**

(Commission of Appeals of Texas, Section B.. March 14, 1923.)

1. **Appeal and error ⊕⟹731(5)—Assignment of error that verdict is not supported by sufficient evidence is too general to be considered.**

An assignment of error which goes no further than to state that the verdict is not supported by sufficient evidence is too general to be considered by the Court of Civil Appeals.

2. **Attorney and client ⊕⟹134(2) — Attorney wrongfully discharged held entitled to recover on quantum meruit.**

Where plaintiff entered into a contract with defendant to perform legal services relative to the recovery of certain real estate in Mexico, in consideration for a share in the property recovered, expenses to be borne equally, and, after such services had been performed in part, defendant refused to pay his share of the expenses, and discharged plaintiff, without fault on his part, the law would imply a promise on defendant's part to pay to plaintiff the reasonable value of the services already rendered.

3. **Attorney and client ⊕⟹134(2)—"Market value" of lands held not germane in suit by attorney on quantum meruit for breach of contract to recover real estate.**

Where an attorney and his client had a contract, whereby the attorney was to perform legal services looking to the recovery of certain real estate in Mexico, in consideration of a share of the land recovered, and the client wrongfully discharged the attorney, on a cross-action by the attorney for compensation, when

---

⊕⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sued by the client for the recovery of certain papers and damages for refusing to perform the services, *held*, that the market value of the land to be recovered could not be considered, "market value" meaning the market value of the land at a definite time already experienced by man, the attorney being entitled to prove the actual value of his services by any competent evidence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Value.]

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by John E. Smith against R. L. Thompson, with cross-action by defendant. Judgment against plaintiff and for defendant on his cross-action was reversed by the Court of Civil Appeals (233 S. W. 876), and defendant brings error. Judgment of the Court of Civil Appeals reversed, and that of trial court affirmed, according to the recommendation of the Commission of Appeals.

Chandler & Pannell, of Stephenville, for plaintiff in error.

B. H. Oxford, of Plainview, for defendant in error.

HAMILTON, J.   J. E. Smith sued R. L. Thompson, an attorney, alleging damages resulting to him by reason of Thompson's alleged willful and wanton failure and refusal to perform legal services for which he was employed by Smith, and for the possession of title papers to certain land, or their value. Thompson answered by general demurrer, special exceptions, general denial, and specially pleaded that he had refused to deliver the papers to Smith because he had failed and refused to pay Thompson the money spent by him in procuring the papers.

By way of cross-action, Thompson pleaded that on the 22d day of March, 1916, Smith entered into a contract with L. N. Frank and plaintiff in error, as follows:

"State of Texas, County of Erath.

"This contract made in duplicate, on the day and date hereinafter set forth by and between J. E. Smith, of Erath county, Texas, hereinafter called first party, and L. N. Frank and R. L. Thompson, attorneys at law, of Stephenville, Erath county, Texas, hereinafter called second party, witnesseth:

"First. That first party has this day employed second party to represent first party in the investigation of the title and possession and such other and further investigation as is necessary to vest title to said land in first party under the terms of a certain contract had by first party with one W. L. Wright of St. Louis, Mo., and other parties connected with said contract; the title and possession of which land requiring the services of second party is hereby described as about twenty-six thousand acres of land and described as fractions A, B, and C, lot No. 4, of the national lands situated in the municipality of Villa Ahumada, of the district of Bravos, state of Chihuahua, in the republic of Mexico, and being the same land as described in the contract above referred to. That second party is to do all such acts and to perform all such services as may be necessary to a full and complete investigation of the title and possession of said lands with especial reference to the ownership thereof in first party and to do all acts necessary in vesting title and possession thereof in first party.

"Second. That in payment of and satisfaction of services rendered and to be rendered in the premises, first party hereby assigns, and conveys to second party a one-third (⅓) undivided interest in and to the lands referred to in the foregoing paragraph, the said one-third undivided interest to vest in second party absolutely: Provided that, if it be found that the lands and premises or any part thereof such as is described in first paragraph be incorporated, or in the name of, or is owned in a corporate name, then first party hereby conveys and assigns to second party a one-third (⅓) undivided interest in and to such shares of capital stock or other evidence of holdings therein as first party owns in said corporation: Provided, further, that second party, in the event of a settlement or compromise by and between first party and the said W. L. Wright or other parties growing out of the contract for the purchase of said land above described by first party, then and in that event first party hereby conveys, sets over and assigns to second party a one-third interest in all moneys, or money, or property paid to first party in such settlement.

"Third. First party is to advance the sum of $50 at such times as it may be necessary to second party to cover such expenses as may be necessary in the investigation of the condition of title and possession of said lands above described; that all other money and expense second party may expend under the terms of this contract over and above the $50, the same to be borne equally by first party, L. N. Frank, and R. L. Thompson, in proportion of one-third each: Provided, that if under the terms of this contract second party shall receive title and possession to any part of said land above described, or interest therein, or shares of stock or money in lieu thereof, second party shall out of their interest so recovered refund to first party the $50, together with one-third of such expense as he may be out under the terms of this contract.

"Witness our hands this the 22d day of March, 1916."

Thompson further pleaded in his cross-action that, upon the execution of the contract above set out, he diligently entered upon the performance of his duties under the contract and prosecuted the investigation by correspondence and by personal trips, at his own expense, and that plaintiff wholly failed and refused to pay his one-third of the expenses; that in 1919 another contract was executed whereby plaintiff in error was to represent the defendant in error for a consideration of one-half of the lands, and ac-

cording to the terms of which the parties were to share the expenses equally. Plaintiff in error then sets up in detail the things done by him in compliance with the latter contract, up to about February 1, 1920, when defendant in error, without cause or excuse, discharged the plaintiff in error from his employment under the contract, and thus terminated it; that by reason of the discharge defendant in error became liable to plaintiff in error for the reasonable value of services rendered up to the time of his discharge; that the reasonable value of the services rendered by plaintiff in error to defendant in error, and the money, time, and labor expended for defendant in error's benefit by plaintiff in error was $10,000. In another count plaintiff in error, in his cross-action, pleaded that—

"Had the plaintiff (defendant in error) not discharged defendant (plaintiff in error) from a further performance of said contracts refered to in the foregoing petition, and had this defendant been permitted by plaintiff to continue under the terms of said contract, and had plaintiff carried out his said contract with this defendant, that defendant would have recovered, and had recognized plaintiff (defendant in error's) rights and claim to the lands and premises, together with all shares of stock in and to said premises * * * and that defendant (plaintiff in error) would have realized therefrom his part of said contract in the sum of $10,000, for which amount he here sues plaintiff in the alternative."

Defendant in error replied to the cross-action by general demurrer, special exception, plea of payment and satisfaction. The case was tried without a jury. Judgment was rendered that Smith take nothing, and in favor of Thompson upon his cross-action for $2,500. Smith appealed, and the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 233 S. W. 876. Thompson sought and obtained a writ of error.

His second assignment of error is that the Court of Civil Appeals erred in considering appellant's fourth assignment of error. That assignment of error is as follows:

"Fourth Assignment of Error. This constitutes paragraphs 6 and 7 of plaintiff's assignment of error. (Transcript, pp. 90 and 91.) The court erred in its decision in giving judgment to the defendant, R. L. Thompson, and against the plaintiff, John E. Smith, for the sum of $2,500, for the reason that there is no evidence in the record to support such judgment; that the decision of the court is not supported by and is contrary to, the evidence produced at said trial; that the great preponderance of the evidence is against said decision."

"The Supreme Court of Texas will not review testimony upon an assignment of error which goes no further than to state that the verdict is not supported by sufficient evidence." Yoe v. Montgomery, 68 Tex. 338, 4 S. W. 622.

[1] The assignment is too general and should not have been considered by the Court of Civil Appeals. Houston v. Blythe, 71 Tex. 719, 10 S. W. 520; Amer. Legion of Honor v. Rowell, 78 Tex. 677, 15 S. W. 217; Ackerman v. Huff, 71 Tex. 317, 9 S. W. 236; Randall v. Carlisle, 59 Tex. 69. If the assignment had been good, the Court of Civil Appeals erred in its disposition of the case.

The Court of Civil Appeals held that in no event could Thompson recover more than the value of a one-third or one-half of the lands to be recovered, and that, in the absence of allegation and proof of the value of the lands, no recovery could be had. The cases cited by the court in support of that holding are those in which suit was brought on the contract, and none of them are cases in which the attorney was discharged or otherwise prevented from pursuing his duties under the contract, except by discontinuance, settlement, or compromise by the client. The suit at bar is one involving discharge of the attorney only. In cases where the client discontinues, settles, or compromises, thereby depriving the attorney from further pursuing his duties, principles different from those applicable where the client discharges the attorney govern. Cases in which the client discontinues, settles, or compromises, without the consent of the attorney, are copiously cited in an annotation to the case of Southworth v. Rosendahl, in 3 A. L. R. p. 472.

The value of the land is of no importance in a case of this kind. It was impossible to determine, in this case, whether Smith would have won the land or stock had he not discharged Thompson. That he would or would not have recovered the land, or his rights therein, could have been shown, and known only after Thompson had performed all his duties under the contract. Under the contract Thompson was "to do all acts necessary in vesting title and possession in the first party" (Smith). This might have included suits at law in the United States or in Mexico, or in both countries. Whether, at the end of these duties, Smith would have had title to the land or stock, in case suit or suits had been necessary to that end, could be shown, with legal certainty, only by the judgment or judgments of the tribunal or tribunals charged with the decision in that litigation. Thompson was not to get any part of the land or of the stock until he had recovered title thereto. The value of land fluctuates. It may change from year to year. It is a matter of common knowledge that land valuations do change from time to time. The term "value," when applied to land, is indefinite and uncertain unless it is referred to a definite time. Not only must it be referred to a definite time, but that time must be past or present time. What the value of land will be in the future cannot

be determined with any legal certainty, because there is no future market for land, and therefore there can be no future market value of land. Market value of land always refers to present or past time. It means the market value of the land at a definite time already experienced by man. It is a question of fact, and not a question of speculation. Who could tell when, if ever, Thompson would have done "all acts necessary in vesting title and possession in the first party" (Smith) and, therefore, when Thompson would have been entitled to his contingent fee under the contract, and what the value of the land then would have been? To undertake to determine such time, and therefore the value of the land Thompson was to receive under the contract, is but to enter upon a sea of speculation. The practice in this state does not permit the embarrassment and confusion that would result from injecting into this case issues of such impossible solution.

[2] Notwithstanding this, the law gives Thompson a remedy. Smith had no right to discharge him or prevent the completion of those services without fault on Thompson's part. He had rendered services to Smith on the faith of a contract. It was not intended by either party that those services should be gratuitous. The law implies a promise on Smith's part to pay to Thompson the reasonable value of services already rendered by him when Smith discharged him and prevented him from further services under the written contract.

"Where there is a special contract, and the plaintiff has performed a part of it according to its terms, and has been prevented by the act or consent of the defendant from performing the residue, he may in general assumpsit recover for the work actually performed, and the defendant cannot set up the special contract to defeat · him." Rodemer v. Gonder (Hazlehurst & Co.) 9 Gill, 294.

[3] So far as the services already rendered by him at the time of his discharge are concerned, Thompson was at large on his quantum meruit, and was at liberty to prove the actual value of that work by any competent evidence. The contingent and uncertain compensation provided for in the contract was not germane to that inquiry in any sense. That contract was broken by one of the parties, and was no longer binding in any respect on either of them.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.