**Ames NOWELL, Appellant,**

v.

**Alexander C. DICK, Appellee.**

**No. 24975.**

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1969.

Rehearing Denied Oct. 28, 1969.

Charles O. Shields, Anderson, Henley, Shields, Bradford & Pritchard, Dallas, Tex., for appellant.

William A. McKenzie, Allen Joe Fish, McKenzie & Baer, Dallas, Tex., for appellee.

Before JONES and COLEMAN, Circuit Judges, and CHOATE, District Judge.

COLEMAN, Circuit Judge:

Ames Nowell appeals from a judgment against him for attorney fees. We affirm the judgment of the District Court.

In April, 1964, Ames Nowell, a Texas resident, engaged Alexander Dick, a New York lawyer, to perform certain legal services regarding a Connecticut suit in which Nowell's wife sought a legal separation. Nowell's original counsel had previously withdrawn from the case.

At the time Dick was retained by Nowell, he was told that Nowell had no funds, but on learning that Nowell was the beneficiary of a substantial trust Dick agreed to take compensation at a later date. Dick employed local Connecticut counsel to aid him in the marital litigation and guaranteed payment of their fees. Countering the separation suit, Dick instituted suit against Mrs. Nowell on behalf of the Peregrine White Sanctuary Corporation, a corporation owned by Nowell. The purpose of the suit was to obtain possession of chattels which had been assigned to the corporation by tendering payment on a note given by the corporation to Nowell and then to Mrs. Nowell.

Between April and September, 1964, Nowell discussed with Dick the fact that he wanted to obtain more money from the "Ames Nowell Trust", of which he was beneficiary and co-trustee. Mr. Dick was retained to determine a way that more income could be taken from the trust. He developed a plan whereby certain dividends and capital gains would be treated as income rather than corpus. At Nowell's request, the plan was never put into effect.

For some reason, involving the desire to keep the assets of the trust from his wife, Nowell desired Dick to investigate the possibility of removing the Ames Nowell Trust from Massachusetts to Texas. Suits were filed in both states by Mr. Dick. When Mrs. Nowell learned of this, she obtained a Connecticut injunction against removal of the trust. Nevertheless, in June, 1965, a Massachusetts Probate Court, upon getting an agreement from Nowell to substitute the First National Bank of Dallas, Texas, as the new trustee, consented to the removal.

Meanwhile, Nowell filed suit in Texas against his wife for annulment and filed a second suit for divorce. Mrs. Nowell obtained injunctions from the Connecticut court to prohibit the prosecution of these Texas suits. In these matters, Mr. Dick coordinated the activities of Connecticut and Texas counsel. In order to obtain the Texas divorce, Nowell asked Dick to stall the Connecticut litigation. Nowell also sought to delay implementation of a trust revocation and income plan to avoid Mrs. Nowell's claim that the income from the trust was community property. The delays

were successful, and the Texas divorce was granted.

Nowell in April, 1964, had instituted suit to recover for whiplash injuries received by him and a friend in an automobile accident. Dick obtained experienced damage suit counsel and worked with him in the prosecution of the suit.

In addition to these matters, Dick prepared pleadings and trial memoranda in a suit (which was never brought) against Mrs. Nowell by the Veritas Institute, a wholly-owned Nowell corporation. Dick also spent time researching the propriety of revoking an alimony agreement which Nowell had with his second wife. He negotiated the reduction of attorney fees which Nowell owed another law firm.

In carrying out the above matters, Dick was employed by Nowell from April, 1964, to November, 1965. At this time, Nowell, expressing dissatisfaction with Dick's handling of his affairs, discharged Dick as his lawyer. Up until September, 1965, Dick had been paid only $2,500 for his services. At that time Nowell and his co-trustee petitioned a Texas court to have the Ames Nowell Trust pay Dick $50,000. The petition was granted. Out of this, Dick paid Connecticut counsel in excess of $17,000. Dick offered to accept the payment from the Trust as full settlement, if Nowell would agree to authorize action on the plans Dick had developed for getting income from the Trust, which would result in an additional $25,000 fee to Dick. This offer was never accepted.

Dick instituted suit in the Federal District Court in Texas to recover reasonable attorney fees for the services performed for Nowell over the eighteen month period. Dick asserted that he was entitled, on quantum meruit, to

$100,000, and that his attorney in the suit for attorney fees, Mr. MacKenzie, was entitled to $20,000. Mayflower Trust Company, a wholly-owned Nowell corporation, was joined as co-defendant, alleged to be an alter ego of Nowell.[1]

The jury returned a verdict for the plaintiff, awarding him $100,000 and awarding his counsel, Mr. MacKenzie, $20,000.[2]

Nowell argues that the judgment should be reversed for the following reasons: (1) the plaintiff failed to prove the necessary elements of his claim, the evidence was insufficient, the judgment was offensive to public policy, and it was excessive; (2) the Court erred in failing sufficiently to instruct the jury on the issues in the case; (3) the Court erred in including Mayflower Trust Company as a defendant until after the verdict, thus prejudicing the rights of the defendant, Nowell; (4) the appellant was denied a fair trial because of the reception into evidence of certain inflammatory matters; (5) the Court erred in failing to grant the defense motion for a change of venue to New York; and (6) the defendant was deprived of a fair trial because of the personal attack made on him by plaintiff's counsel during the closing argument.

## I

The appellant's primary argument for reversal is that the jury verdict, awarding $120,000 in attorney fees was excessive and against the weight of the evidence.

The parties did not fix the amount of compensation by agreement. Thus, in his complaint, the plaintiff set out alternative theories of recovery: (1) a contractual agreement to pay a reasonable fee, and (2) quantum meruit.

---

1. After the Ames Nowell Trust was removed from Massachusetts to Dallas, Texas, Nowell sought a means of placing its assets beyond the reach of creditors. After Dick was fired the Trust was taken from the First National Bank of Dallas to a bank in Houston. Then Nowell substituted Mayflower Trust Company for

Fannin Bank as a co-trustee. Nowell apparently invaded the Trust and sold the stocks and bonds which composed the greater part of the Trust assets.

2. Since Nowell had already paid Dick $32,500, the net judgment against him on that score was $67,500.

It was established that Dick was employed by Nowell for eighteen months. During this time he handled several matters for Nowell. Although he did not actively participate in every phase of the various areas of litigation, but instead retained local counsel, he did oversee all of the matters during that period. Although Dick kept no time records as to the exact amount of time he worked for Nowell, he testified that for eighteen months he worked Saturdays, Sundays, and evenings, that he spent as much as 90% of his time, or practically all of his time, professionally representing and in behalf of Nowell.

The appellant's chief complaint is that the Court erred in failing to instruct the jury that the plaintiff could recover only on quantum meruit.

New York law apparently applies to this issue. The attorney-client relationship arose in that state and the vast majority of the attorney's work took place there.

In one instance, a Texas client employed a New York attorney to represent him in New York litigation and then a dispute arose as to attorney fees. A New York court, pursuant to a statute, fixed a lien on the client's property. To determine his right to a fee, the attorney sued in a Texas federal court. This Court, in reviewing the district court, said:

> "[W]e do not doubt therefore that by his employment of counsel and the institution of suit in the Court in New York the appellant became subject to the statutes of New York regulating and controlling the attorney-client relationship with reference to the fixing and enforcing of the respective rights between the parties." Hoxsey v. Hoffpauir, 5 Cir., 1950, 180 F.2d 84, 86.

Following New York law, it has been held that a client's "right" to discharge his attorney at any time is an inherent term in the employment contract and, as a result, the attorney can recover only on quantum meruit. Mar-tin v. Camp, 219 N.Y. 170, 114 N.E. 46, L.R.A.1917F, 402. The quantum meruit recovery is not, however, restricted to the contract limitations. In re Montgomery's Estate, 272 N.Y. 323, 6 N.E. 2d 40, 109 A.L.R. 669 (1936); see, also Schwartz v. Broadcast Music, Inc., S.D. N.Y., 1955, 130 F.Supp. 956. But even if Texas law is said to apply, the result is the same. If an attorney is discharged, he can recover in quantum meruit and is not limited by the terms of the contract. Thompson v. Smith, 248 S.W. 1070 (Com.App., adopted by Texas Supreme Court 1923).

While it is true that the trial judge at no time used the phrase "quantum meruit" in instructing the jury, she repeatedly spoke of the "reasonable" value of the services for which the plaintiff sought to recover. This instruction is consistent with Kline v. Blackwell, 5 Cir., 1933, 63 F.2d 897, where we held that when an attorney is employed to render services without an agreement as to fee, he is entitled to recover "reasonable compensation".

The appellant next contends that the verdict was excessive and cannot stand. In reviewing the jury's finding here, the appellate court is bound by the rule that it cannot re-weigh the evidence and set aside a jury verdict merely because the jury could have drawn different conclusions or because the court feels other results would have been more reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L. Ed. 520 (1944). In reviewing a determination of attorney fees, this Court followed *Tennant*:

> "This brings us to the only real question of substance—whether the jury verdict for $80,000 was reasonable or so excessive as to be without foundation. In assaying this, it must be remembered that we are dealing with the verdict of a jury and having demanded one, Burnett [the defendant] cannot complain that a jury might have been more liberal than would a judge. We test this verdict as we would any other and finding

ample evidence to support it, approve it as would a Texas court (citations omitted). We decline, if we could (citations omitted), any more than would a Texas court, to disregard the jury verdict and retry the claim or arrive at any independent judgment. (Citations omitted)." Burnett v. Graves, 5 Cir., 1956, 230 F.2d 49, 53, 56 A.L.R. 2d 1.

■ It is even more difficult here to overturn a verdict, where there is no definite determination as to the amount of time spent by the attorney on the work.

"[T]he considerations which may control the fixing of an attorney fee necessarily are flexible and inabsolute, and where the matter is submitted abstractly, as it was here, without proof of specific time spent, etc., the question of the amount is simply one of general reasonableness." Dumas v. King, 8 Cir., 1946, 157 F.2d 463.

■ We hold that the instructions pertaining to the scope of recovery were adequate and that the verdict is not clearly excessive. The basic problem in setting a reasonable value for the attorney fees arose because the plaintiff kept no time sheet. It was difficult, if not impossible, to "pinpoint" the extent of the services actually performed. Nevertheless, he did testify, and it was not contradicted, that he spent the vast majority of the eighteen months in the service of Mr. Nowell. Three expert witnesses, all attorneys, individually testified that a reasonable fee, based upon the work done by Mr. Dick, was $100,-000, $135,000 to $150,000, and $200,000.

Mr. Nowell owed Attorney Dick for professional services. That is undisputed. The question was, how much? Nowell did not settle it for himself. He preferred, as was his right, to let a jury settle it, after a lawful trial. Mr. Nowell, however, did not appear at the trial and did not dispute Dick's testimony. In fact, strenuous efforts to take his deposition met with failure. He seems to have been in Europe at the time of the trial. It matters not what we might have done if this were a case in which we were called upon to approve or confirm a fee in the exercise of our independent discretion. We can only review the proceedings below. Having done that we see no lawful reason to disturb the verdict.

■■ The appellant's lengthy argument regarding compensation under an illegal or void contract has no application here. There is no evidence to indicate that the contract was illegal. Likewise, the appellant misses the mark when he talks about the extraordinary burden of proof placed on an attorney to show that the contract was fairly made and not the result of overreaching. That matter is relevant only when the contract is entered into *after* the attorney-client relationship is established. See Lady v. Worthington, 57 Cal.App.2d 557, 135 P.2d 205 (1943). Here the agreement was made prior to the attorney-client relationship. Furthermore, the record discloses that the agreement was entered into by experienced businessmen, as a result of arms-length bargaining.

■ Finally, the appellant contends that the letters from Mr. Dick to Mr. Nowell shortly after his dismissal as counsel conclusively show that Dick acknowledged full payment for his services. But this raised a question of fact, to be resolved by the jury. In addition, since recovery here was based on quantum meruit, the jury was not bound to limit it to the valuation set by the parties.

II

The appellant contends that the jury instructions were insufficient and prejudicial for the following reasons: (1) there was no marshalling of evidence; (2) there was no guidance to the jury as to how to determine a quantum meruit recovery; (3) there was no instruction as to the main defense that there had been payment in full; (4) the instruction concerning Mayflower Trust's being

an alter ego of Nowell was erroneous; (5) there was no instruction on how the jury was to treat the expert testimony; and (6) the Court erred in failing to instruct as to burden of proof.

As to the purported errors that the Court failed to instruct the jury as to the defendant's main defense of payment, on how to deal with expert testimony, and on quantum meruit, these cannot be raised here, since the defendant failed to object to them prior to the jury's retiring, as required by Rule 51, F.R.Civ.P. This Court has consistently held that specifications of error dealing with the giving of or failure to give instructions will not be considered unless the party objects thereto in the manner provided by the rule, Cockrell v. Ferrier, 5 Cir., 1967, 375 F.2d 889; Williams v. Atlantic Coast Line Railroad Company, 5 Cir., 1951, 190 F.2d 744. While it is true that in any case an appellate court will notice an error so fundamental as to result in a miscarriage of justice, Simonton v. James, 5 Cir., 1954, 212 F.2d 174, the power will only be exercised in exceptional cases, Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214, 2 A.L.R.2d 442.

With regard to the purported error in failure to marshal the evidence, the Supreme Court has made clear that this is a matter of discretion, see Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1932).

The appellant also says that the Court erred in failing to instruct as to burden of proof. While the Court did not specifically use the words "burden of proof", the Court did ask the jury to determine "from a preponderance of the evidence" the reasonable attorney fees. The Court is not bound to adopt the exact language which counsel chooses; he has "considerable latitude in the choice of language used to convey to the jury in a clear and correct fashion the applicable law". Kayo Oil Company v. Sammons, 5 Cir., 1963, 321 F.2d 729, 730. The instruction is sufficient if it covers the subject matter of the requested instruction. Fleming v. Michigan Mutual Liability Company, 5 Cir., 1966, 363 F.2d 186.

It cannot be said that these instructions were insufficient or that the Court erred in failing to give other instructions. There was only one issue—the reasonableness of the fee for the attorney's services—and that was of no special complexity. Although the instructions were brief they apprised the jury of the elements in issue.

### III

Appellant contends that the Court erred in not dismissing Mayflower Trust as a co-defendant until after the verdict.

First, he argues that Mayflower, from the inception of the litigation, was not a proper defendant. Before trial there was a motion to dismiss Mayflower, which was, at that stage, correctly denied. It was not until judgment on the verdict was about to be entered that certain contingent beneficiaries of the Ames Nowell Trust (who were minors) sought to intervene. By this action the trial judge had her attention directed for the first time to the fact that these minors had not been given the notice required by the Texas Trust Act, Art. 7425b–19, Vernon's Ann. Texas Civil Stats. Both Nowell and Mayflower went to verdict without ever raising the point. When it was raised, the Court dismissed Mayflower Trust and entered judgment against Nowell only. As shall be seen, this action was eminently correct.

The original complaint alleged that Mayflower was a mere conduit through which Nowell transacted business and that Nowell had used the corporation, which he had caused to be created after the Trust was moved to Texas, to put his assets beyond the reach of his creditors.

Rule 18(b), F.R.Civ.P., expressly permits the joinder of two claims into one action—a claim for money and a claim to have set aside a fraudulent conveyance. By permitting such a joinder

of claims, the Court, of necessity, had to permit a joinder of parties against whom the claims were asserted.

The contingent beneficiaries, under Art. 7425b–19, were not indispensable parties to the suit. American National Bank of Beaumont v. Biggs, Tex. Civ.App., 1954, 274 S.W.2d 209. In fact, Art. 7425b–19 itself says only that those beneficiaries *may* intervene. Art. 7425b–19, subd. B. They were required to be given notice and an opportunity to intervene. That would imply that, after notice and an opportunity to intervene are given, a judgment may be rendered against the trustee without the beneficiaries having been joined as defendants.

Since the complaint undoubtedly stated a cause of action against Mayflower, and the court had no notice of the infirmity as to notice to the minor contingent beneficiaries, Nowell cannot complain of the introduction of evidence concerning the Mayflower Trust. It was relevant so long as Mayflower remained in the case. In fact, within the four corners of this litigation much of it would have been relevant even if Mayflower had never formally been made a party defendant.

Secondly, appellant argues that the Court erroneously applied the "alter ego" doctrine, with respect to Nowell and Mayflower Trust. As it turned out, Mayflower was dismissed. No relief was granted against it. Hence, nothing is left for us to review as to Mayflower, and, as indicated, the testimony was relevant as to the personal liability of Nowell.

3. Appellant contends that the Court erred in refusing to admit into evidence a letter from an attorney for the Massachusetts co-trustee of the Ames Nowell Trust to a Mr. Bozeman, concerning Dick's proposed capital gains plan. However, it is quite obvious that this letter was hearsay and properly excluded.

4. It is asserted that the Court erred in reviewing evidence of Mr. Dick's capital gains plan, since the plan was never put into effect. This contention must also fall. Although the plan was never put into effect, because of the defendant's request to cease work on it, nevertheless, the attorney had spent considerable time formulating the plan. The lack of success of the plan should not deprive him of the right to introduce evidence regarding it as it was relevant to prove the services rendered.

## IV

Appellant specifies as error the failure of the trial court to grant him a change of venue to New York. Venue, in this diversity case, was proper in either the district where the plaintiff resided, where the defendants resided, or where the claims arose. 28 U.S.C. § 1391(a). Since the defendants were residents of Texas, the venue of the Texas federal court was proper.

Under the federal venue statutes, a court may, for the convenience of parties and witnesses, transfer the action to any other district where it might have been brought. 28 U.S.C. § 1404(a). The motion is addressed to the sound discretion of the Court, and the denial of the motion will not be overturned on appeal in the absence of abuse of that discretion. Bearden v. United States, 5 Cir., 1963, 320 F.2d 99, cert. denied 376 U.S. 922, 84 S.Ct. 679, 11 L.Ed.2d 616. There was no abuse of discretion here. The party who complains of the venue was a resident of the district in which the suit was brought. Although it is true that many of the activities relevant to the case took place in New York and that several witnesses resided there, the defendant makes no showing that the trial in Texas prejudiced his rights to have a fair trial.

## V

Finally, appellant contends that personal attacks made by plaintiff's counsel upon defendant's counsel prejudiced defendant's chance for a fair trial.

The arguments appear in the record. They were, to say the least, quite bizarre and unusual. Nevertheless, neither side raised any objection below. There was no motion to caution the jury; there was no motion for a mistrial. It is apparent that this trial quickly degenerated, on both sides, into personal attacks upon opponents. One side extensively disparaged the other and was besmirched in return. The trial judge would have been justified had she of her own motion brought out some strong bridles and vigorously used them. Both sides were vigorously playing "Lay on McDuff". The Judge must have thought that they were about evenly matched in ammunition and fire power, so she left them to their pleasure. A defendant cannot operate in that fashion below and thereafter take advantage of it when he becomes an appellant. It is to be doubted that he would now be able to see anything wrong if he had won. Of course, the verdict quickly healed the plaintiff's lumps, so he has no disposition to complain.

The other assignments of error do not justify discussion.

Affirmed.