Billy Ray DELANCEY, Plaintiff-Appellant,

v.

MOTICHEK TOWING SERVICE, INC., Defendant-Appellee.

No. 27401.

United States Court of Appeals, Fifth Circuit.

June 1, 1970.

Reginald T. Badeaux, Jr., John G. Discon, Darryl J. Tschirn, New Orleans, La., for plaintiff-appellant.

William E. Wright, New Orleans, La., for defendant-appellee.

Before WISDOM, SIMPSON and CLARK, Circuit Judges.

WISDOM, Circuit Judge.

Billy Ray Delancey sued his employer, Motichek Towing Service, Inc., for damages under the Jones Act, 46 U.S.C. § 688 et seq., and for maintenance and cure under the general maritime law. He sustained his injuries in an automobile accident while returning to Motichek's tug, BIG MOT with beer to wash down dinner. Delancey served as a deckhand and watchman on the BIG MOT. The jury decided against Delancey. So do we. The jury found that he was not entitled to damages under the Jones Act because his accident did not occur while he was in the course and scope of his employment. The jury decided that he could not recover for maintenance and cure because he was not in the service of his vessel when injured. On appeal, Delancey questions the district court's instructions relating to his claim under the Jones Act, particularly the court's failure to instruct the jury as to what constitutes willful misconduct. Delancey does not question the correctness of the district court's instructions relating to his claim for maintenance and cure. We affirm.

## I.

Delancey was a deck hand aboard the BIG MOT. It is a small tug. The crew usually consists of the owner, Othmar H. Motichek, who serves as master, and several deck hands. April 21, 1967, the BIG MOT tied up for the weekend at the Louisiana Cement Company dock in New Orleans. Motichek ordered Delancey to remain on board at watchman and to ready the vessel to resume operations Monday, April 24. Upon leaving the vessel, Motichek asked Herbert Seals, the vessel's first mate, according to Delancey, to find a deck hand available for work on Monday. Delancey's tour of duty was at an end and the new deck hand was to be his replacement.

April 22, Seals, while at home in Bogalusa, a small town near New Orleans, asked Jerry Woodward to work on the BIG MOT. He agreed. According to the plaintiff, Seal then called Motichek and informed him of Woodward's availability. Motichek is said to have approved of Woodward as Delancey's replacement. On Sunday, April 23, Seals and Woodward, in Woodward's car, left Bogalusa for New Orleans. On the way, they stopped twice to purchase beer and drove while consuming the last beer.

When they arrived in New Orleans, Seals asked Delancey if he would remain on board the vessel in order to assist in training Woodward. Delancey agreed. He devoted the remainder of the day to training Woodward as to the maintenance and operation of the vessel.

As the dinner hour drew near, Seals, who was in the galley preparing dinner, realized that there was nothing on board to drink with the meal. He gave Woodward five dollars and asked him to go ashore to purchase beer. Woodward agreed and Delancey accompanied him. They began their return to the vessel after purchasing the beer and gasoline for Woodward's car. At about 7:00 p. m. Woodward's car, in which Delancey was a passenger, struck the rear end of an automobile that was stopped at an inter-

section to make a turn. Both Woodward and Delancey were severely injured.

■ Delancey's claim for damages under the Jones Act was predicated upon the contention that Seals was the first mate of the vessel and therefore was either expressly or impliedly authorized to hire Woodward and to instruct Woodward and Delancey to go ashore [1] and purchase beer for the vessel. In accord with this theory, at the time of the accident both Woodward and the plaintiff were within the course and scope of their employment. Woodward's negligence in striking a stopped automobile would be imputed to his employer thus giving rise to Motichek's liability to the plaintiff. As to the claim for maintenance and cure, Delancey contended that he was injured in the service of the vessel, that he was employed by the defendant-appellee, and that the accident did not result from his willful misconduct.

The defendant contends that Seals was not the first mate of the vessel, but a deck hand in the same class as Delancey and Woodward and had no authority, express or implied, to give orders to any of his fellow deck hands to purchase beer for the vessel. The defendant asserts that Seals had no authority to hire Woodward but was authorized only to refer Woodward to Motichek, who would make the final decision on Monday concerning his employment. According to the defendant, the accident occurred while appellant was not in the service of the vessel, since Delancey left his post while on duty, and purchased and transported beer to the vessel in violation of standing instructions not to do so. As to maintenance and cure, the defendant asserts that Delancey was not in the service of his ship since he was engaging in a joint venture with Woodward that included an unauthorized search for beer, drinking beer on the return trip to the vessel, and gross acts of misconduct in speeding at night without lights on a dangerous highway.

## II.

■ We need not go into the evidence in detail. The contentions of each side were supported by evidence properly submitted to the jury. Reasonable men on a jury might differ on the facts and the inferences to be drawn from the facts.

At the close of the plaintiff's case, the defendant moved for a directed verdict on the Jones Act portion of the case. The defendant argued that the plaintiff had failed to establish that Seals had any authority to order Delancey to go ashore to purchase beer and that unless such authority was clearly established Seals was acting beyond the course and scope of his employment; that Seals therefore was not acting for Motichek at the time of the accident and Delancey's injury would not have occurred while he was in the course and scope of his employment. This argument was similarly advanced to apply to Woodward in that he could not have been in the course and scope of his employment if the man who ordered him to go ashore had exceeded his authority. The defendant contended that since the judge had previously decided upon the instruction that he was going to submit to the jury and since the instruction was essentially the same as the ground asserted for a directed verdict, as a matter of law, the plaintiff could not recover under the Jones Act.

The plaintiff argued that the defendant's requested instruction relating to a fellow employee's authority to issue orders was an incorrect statement of the law. The plaintiff then argued that the issue was not limited to whether a fellow employee had the authority to issue certain orders, but in addition whether the plaintiff was guilty of willful misconduct so as to remove him from the scope of his employment thus precluding recovery of his claim under the Jones Act. It was the plaintiff's position that both theories should be submitted to the jury for their determination.

---

[1]. The fact that a seaman is injured ashore and not on board the vessel does not defeat his right to the remedy provided by the Jones Act. O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596; Braen v. Pfeifer Oil Transp. Co., 1959, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191.

The defendant's motion was properly denied.

At the close of the instructions to the jury, the judge afforded the attorneys an opportunity to state their objections. Counsel for the plaintiff stated:

Your Honor, the plaintiff would like to make the following objections to the charges as given by number.

In regard to defendant's submitted special charges 5 and 6 we would like to object to the Court having given those charges.

Additionally, we would like to lodge an objection to the Courts failure to instruct, or define the term "willful misconduct".

Other than that your Honor, we have no objection.

The jury returned a verdict in favor of the defendant specifically finding that Delancey's injury did not occur while he was in the course and scope of his employment or while he was in the service of his ship.[2]

### III.

A. In oral argument and in his brief, Motichek contends that Delancey failed to comply with Rule 51 of the Federal Rules of Civil Procedure [3] concerning the objection to the submission of the defendant's requested instructions. Motichek asserts that Delancey's objection was vague and indefinite and accordingly failed to preserve this point for review.

Williams v. Atlantic Coast Line R. R., 5 Cir. 1951, 190 F.2d 744.

Rule 51 expressly requires that the party objecting to any instruction must state "distinctly the matter to which he objects and the grounds of his objection". This Court has consistently held that the specifications of errors dealing with the giving of or failure to give instructions will not be considered unless the party objects in the manner provided by the rule. Nowell v. Dick, 5 Cir. 1969, 413 F.2d 1204; Guest House Motor Inn, Inc. v. Duke, 5 Cir. 1967, 384 F.2d 927; Cockrell v. Ferrier, 5 Cir. 1967, 375 F.2d 889; Williams v. Hennessey, 5 Cir. 1964, 328 F.2d 490, 491; Pruett v. Marshall, 5 Cir. 1960, 283 F.2d 436; Williams v. Atlantic Coast Line R. R., 5 Cir. 1951, 190 F.2d 744. The objection must be sufficiently specific to bring into focus the precise nature of the alleged error. Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Atlantic Coast Line R. R. v. Gunter, 5 Cir. 1956, 229 F.2d 842. A general objection presents nothing for review. Lumbermens Mut. Cas. Co. v. Hutchins, 5 Cir. 1951, 188 F.2d 214. See Charles A. Wright, Inc. v. F. D. Rich Co., 1 Cir. 1966, 354 F.2d 710, cert. denied, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673.

In *Lumbermens* the defendant objected specifically to the district court's submitting charges 2, 3, 4, 8, 9, 10, 11 and 14 of the plaintiff's Special Requested Charges. On appeal, notwithstanding the reference to numbered charges, this

2. INTERROGATORIES PROPOUNDED TO JURY

1. Was the plaintiff, Billy Ray Delancey, injured while he was in the course and scope of his employment?
Answer yes or no   Yes ___ No ___
\*        \*        \*        \*        \*
9. Was the plaintiff, Billy Ray Delancey, injured while in the service of his ship?
Answer yes or no   Yes ___ No ___

3. Rule 51 of the Federal Rules of Civil Procedure provides

*Instructions to Jury: Objection*

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Court held that the appellant had failed to comply with the specificity requirement of Rule 51. *See also* Elliot v. Watkins Trucking Co., 7 Cir. 1969, 406 F.2d 90, 92.

■ We hold that the appellant's objection to the submission of the defendant's requested instruction was not sufficient to preserve that point for appellate review.

■ It is arguable, however, that under this Court's holding in St. Joe Paper Co. v. Hartford Accident & Indem. Co., 5 Cir. 1967, 376 F.2d 33 and Williams v. Hennessey, 5 Cir. 1964, 328 F.2d 490, the appellant, by bringing his objection to the attention of the court at the argument for a directed verdict has sufficiently preserved his objection for appeal. It is not necessary, however, for this Court to make a firm holding on this point. A reading of the entire instruction relating to the scope of a fellow seaman's authority to issue orders convinces us that there was no error. Although it is true that in any case an appellate court will notice error so fundamental as to result in a miscarriage of justice, that power will only be exercised in exceptional cases. Simonton v. James, 5 Cir. 1954, 212 F.2d 174. *See also* Nowell v. Dick, 5 Cir. 1969, 413 F.2d 1204. That, however, is not this case.

B. The appellant's second argument focuses on the failure of the district court to explain adequately to the jury what constitutes willful misconduct according to admiralty law. This argument is predicated upon the belief that the jury could have based its determination that Delancey's injury did not occur while in the scope of his employment upon three different grounds: (1) that Seals was not the vessel's first mate and did not, therefore, have any authority to order a fellow employee to go ashore; (2) that Seals, when he ordered Woodward and Delancey to go ashore to purchase beer was violating the defendant's express orders and was not, therefore, acting for the defendant and (3) that Delancey by leaving the vessel contrary to Motichek's express orders and by drinking beer while returning to the vessel was guilty of willful misconduct.

■ The appellant contends that since the jury could have based its decision upon this last ground, the district court should have instructed the jury as to the degree of misconduct a seaman must engage in to constitute willful misconduct. The record indicates that the appellant has fully complied with the requirements of Rule 51 and has, therefore, preserved this point for review.

In reviewing the claim of an alleged infirm instruction, we are guided by the general rule that

> In considering the correctness and adequacy of a charge to the jury, it should be taken as a whole and read in its entirety; that is, each instruction must be considered in connection with others of the series referring to the same subject and connected therewith, and if, when taken together, they properly express the law as applicable to the particular case, there is no just ground of complaint, even though an isolated and detached clause is in itself inaccurate, ambiguous, incomplete, or otherwise subject to criticism.

Nolan v. Greene, 6 Cir. 1967, 383 F.2d 814, 816.

This Court has held that

> A jury charge is comprehensive and ought not to be read in fragments. Our scrutiny of the district court's instructions must be orbitary and universal, not narrow and *monocular*. (Emphasis added.)

McDaniel v. Slade, 5 Cir. 1968, 404 F.2d 607, 609. *See* 2B Barron & Holtzoff, Federal Practice and Procedure § 1105 (Wright ed. 1961).

■ This Court is not monocular; we have two eyes, each; we use all sorts of glasses, including bi-focals. Our function is to satisfy ourselves that the instructions, viewed, if necessary, through corrected lenses, "show no tendency to confuse or mislead the jury with respect to the principle of law applicable." Allers

v. Bohmker, 7 Cir. 1952, 199 F.2d 790, 792.

The district court's initial remarks to the jury relating to the scope of a seaman's employment were couched in general terms.

> A seaman who goes ashore, either with permission to do so, or pursuant to the order of a superior, may remain in the scope of his employment and in the service of his ship, unless he indulges in culpable or willful misconduct which causes his injury.

After concluding its general instructions relating to recovery under the Jones Act, the court then instructed the jury in the light of the evidence that had been presented. As to that portion of the instruction relating to the issue as to whether Delancey was in the course and scope of his employment, the court instructed the jury fully.[4]

Delancey's attorney objected to the court's failure to instruct on the term willful misconduct on the ground that if the jury were not so instructed they could conclude that what Delancey was doing was not directly furthering the mission of the vessel, but rather, was doing something that was personally enjoyable and, therefore, he had removed himself from the scope of his employment by going to purchase the beer and drinking a beer while returning to the vessel.

■ A litigant is entitled to have a trial judge advise the jury of his claims and theories of law, if, they are supported by the evidence and brought to the attention of the court. Nehring v. Empresa Lineas Maritimas Argentinas, 5 Cir. 1968, 401 F.2d 767; Marshall v. Isthmian Lines, Inc., 5 Cir. 1964, 334 F.2d 131; Oliveras v. United States Lines Co., 2 Cir., 1963, 318 F.2d 890. The court is not required to give instructions in the language and form a litigant's lawyer fancies. The court has "considerable latitude in the choice of language used to convey to the jury in a clear and correct fashion the applicable law". Kayo Oil Co. v. Sammons, 5 Cir. 1963, 321 F.2d 729, 730. *See also* Nowell v. Dick, 5 Cir. 1969, 413 F.2d 1204. If the instruction as given sufficiently covers the case so that a jury can intelligently determine the questions presented, the judgment will not be disturbed because further amplification is refused. United States v. Bayer, 1947, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 654; Ohio & Mass. Ry. v. McCarthy, 1878, 96 U.S. 258, 24 L.Ed. 693.

---

4. [T]hat any seaman that goes ashore pursuant to the order of his superior remains in the course and scope of his employment as long as he is attempting to carry out that order. Therefore, if you find from the evidence that Mr. Delancey and Mr. Woodward believed Mr. Seals to be superior in rank to themselves, in that they thought him to have authority to issue orders to them, and if from the evidence you believe that Mr. Seals did tell Mr. Woodward and Mr. Delancey to go purchase the beer ashore, then you must find that they, Mr. Delancey and Mr. Woodward, were in the course and scope of their employment at the time of their injury, since they were acting pursuant to the orders of their superior.

Further, an employee is not within the course and scope of his employment merely because he was, at the time in question, performing an act which some other employee told him to do. In other words, for an employee to be within the course and scope of his employment when performing an act which a fellow employee told him to perform, it is necessary that the fellow employee be someone who was authorized to give instructions or orders to other employees. If you find that the plaintiff had been told by Mr. Seals to go ashore and purchase beer and bring it back to the boat, you must also find that Mr. Seals himself was authorized by the defendant to instruct fellow employees with respect to their duties, and in particular that Mr. Seals was authorized to direct fellow employees to go ashore and purchase beer and bring it back to the boat, or that it was customary for employees aboard the vessel to have beer with their meals.

Accordingly, if you find that Mr. Seals was not authorized by the defendant to instruct employees to go ashore and purchase beer and bring it back to the vessel, or that this was not a customary practice aboard the vessel, you will, in that event, render your verdict in favor of the defendant.

The theory of the plaintiff's case was that Seals, as the vessel's first mate, had the authority to order Woodward and Delancey to go ashore to purchase the beer and that Delancey was, therefore, acting within the scope of his employment when injured. The theory of the defendant-appellee's defense was two-fold: (1) Seals was not the first mate and did not have any authority to order a fellow employee to go ashore. and that Delancey was not within the scope since he violated Motichek's orders not to bring alcoholic beverages on board the ship. The witnesses that were called on behalf of both parties testified primarily as to Seals' status on board the vessel, the extent of his authority and whether alcoholic beverages were allowed on board the BIG MOT. The only testimony which could support an instruction as to willful misconduct was that of Delancey himself and, perhaps, that of one other witness, William C. Medley. Medley testified that he saw Woodward's car travelling without lights and at a fast rate of speed. Delancey admitted that both he and Woodward were drinking a beer while returning to the vessel. The theory of both parties as to the claim for maintenance and cure, however, included Delancey's alleged misconduct as he was returning to the vessel. The court accurately instructed the jury as to the degree of misconduct a seaman must engage in in order to bar his recovery for maintenance and cure. *See* Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503; Aguilar v. Standard Oil Co., 1942, 318 U.S. 724, 63 S.Ct. 930, 84 L.Ed. 1107.

After instructing the jury on the law applicable to the case, including the language quoted above, the court carefully marshalled the evidence and highlighted the theories upon which the plaintiff and defendant placed primary reliance. Whether Delancey was guilty of willful misconduct while returning to the vessel so as to remove him from the scope of his employment was clearly not the inquiry. See Nehring v. Empresa Lineas Maritimas Argentinas, 5 Cir. 1968, 401 F.2d 767.

In the circumstances this case presents, we hold that the appellant's contention that the jury should have been instructed as to willful misconduct is not well-founded. The nature and validity of the plaintiff's theories were sufficiently brought home to the jury by the testimony and the inquiries of counsel of witnesses for both sides and by the trial court's marshalling of the evidence. The court's instructions clearly articulated the controlling issues.

Reading the instruction in its entirety, we conclude that the jury must have clearly understood the basic issues before it. Lyle v. R. N. Adams Construction Co., 5 Cir. 1968, 402 F.2d 323.

The judgment of the district court is affirmed.