Larry J. McCACHREN and Charlotte C.
McCachren, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, FARMERS HOME
ADMINISTRATION et al., Defendants-
Appellees.

No. 78–2784
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 26, 1979.

Carver A. Randle, Indianola, Miss., for
plaintiffs-appellants.

H. M. Ray, U. S. Atty., Tyree Irving,
Asst. U. S. Atty., Oxford, Miss., for U. S.
Dept. of Agriculture.

Before CLARK, GEE and HILL, Circuit
Judges.

PER CURIAM:

Larry, Charlotte, Jess, and Alice Mc-
Cachren, joint landowners in Tallahatchie

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir.
1970, 431 F.2d 409, Part I.

County, Mississippi, are appealing the district court's denial of a preliminary injunction to prevent an attempted foreclosure sale by the Farmers Home Administration (FmHA) of 500 acres of farmland. We find the McCachrens' contention that they were denied a due process hearing without merit and affirm.

In the spring of 1977 the McCachrens executed a real estate deed of trust on approximately 500 acres of their farmland and a security agreement and financing statement pledging certain equipment and produce as security for loans then outstanding with the FmHA. It was a hard year for farmers, and by January 1, 1978, the McCachrens were admittedly in default by over $30,000 on these secured loans. FmHA asserts that they also breached the security agreements by selling a mortgaged wheat crop and disposing of mortgaged cattle in late 1977 without the creditor's permission. These defaults prompted the FmHA, pursuant to the terms of the agreements, to send the McCachrens a Notice of Acceleration and Demand for Payment on March 22, 1978 and again on April 17, 1978. Larry McCachren immediately contacted his lawyer who arranged a meeting with Charles Flake, the Acting District Director for FmHA. There McCachren explained that the approximately 300 missing head of cattle had died from drinking toxic water in September 1977. However, he admitted to selling an encumbered wheat crop, attempting only to justify the sale as necessary to repay a crop loan from his father. Flake concluded that McCachren had not acted in good faith and recommended that the planned foreclosure continue. McCachren and his attorney then arranged a meeting with Mark Hazard, state Director of FmHA and two other agency officials, which did not occur until June 21, 1978, almost a week after the first foreclosure notice was published in the local newspaper. McCachren had hoped to stop the foreclosure and try to arrange an emergency reorganization loan to help him repay his arrearage. Hazard denied the requests because of the delinquent payments, McCachren's poor management record, and his disposition of secured property.

With the foreclosure sale scheduled for July 10, the McCachrens obtained in district court a temporary restraining order which postponed the date of sale until a preliminary hearing could be held on their injunction request. They never denied being in default but argued that they were not given a hearing comporting with fifth amendment due process rights on their request to postpone foreclosure. FmHA responded that the deed of trust signed by the McCachrens contained a clause effectively waiving their rights to notice and a hearing; alternatively it contended that they were given a sufficient due process hearing in the course of the conferences with FmHA officials. The district court denied the preliminary injunction. It found that, although the sale would cause irreparable harm to the McCachrens outweighing any harm to the FmHA, the McCachrens did not show a likelihood of success on the merits. It noted that Mississippi law recognizes valid waivers of fifth amendment rights but determined that regardless of the wording of the deed of trust here the McCachrens were given proper and sufficient notice and afforded effective hearings regarding the foreclosure.

The McCachrens here argue that the fifth amendment requires they be accorded an impartial hearing to "clarify once and for all the exact reason(s) why the foreclosure was initiated" and to explain why they defaulted in payment. Because we find that their due process rights were not violated, we do not consider the waiver question.

■ Procedural due process guarantees do not protect all imaginable private interests affected by government action but only the liberty and property interests encompassed by the fifth amendment. The equity of a debtor in realty has been held to be a "significant property interest" entitled to due process protection. *Fuentes v. Shevin*, 407 U.S. 67, 84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Law v. USDA*, 366 F.Supp. 1233, 1238 n. 6 (N.D.Ga.1973). However, the McCachrens had no such property inter-

est in this case. The plain terms of their agreements with the FmHA provide that in case of default, the government may assert its ownership rights to the secured property. Here there is no question but that there were defaults of several obligations in the agreements. Had the McCachrens challenged the assertions of default, a hearing would have been necessary to resolve conflicting claims of title. *Fuentes v. Shevin, supra.* Here, however, the McCachrens admitted default but requested a hearing to explain the circumstances of their default and to negotiate a reorganization loan from FmHA to help them get back on their feet. They presented evidence in the district court to show that the government has in past years provided such loans and that it had assisted other farmers in the same area who had also fallen behind in payments.

The agency's record of bailing out farmers after bad years, they assert, justifies their expectation of receiving a reorganization loan to prevent foreclosure. But there is no provision in their agreements with FmHA which would create a legal entitlement to another loan. To the contrary, the agreements clearly stated FmHA's right to summary foreclosure upon default. Thus although the McCachrens may have a serious need for help to prevent foreclosure and may have hoped that the government would not assert its contractual rights, they had no *property* interest sufficient to require the government to give them a hearing when it declined to reorganize their debts. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The McCachrens lost their ownership rights to the property on their admitted default. They have no property interest, in the constitutional sense, in a reorganization loan. Thus, the denial of a hearing to explain the circumstances of their default or their reasons for expecting that FmHA would refund their plight presents no federal constitutional question. *See Codd v. Vel-*

*ger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Only if the matter of default were in question or the debtor had a legal expectancy in a reorganization of debt would the landowners be constitutionally entitled to a hearing. In this case FmHA officials heard the McCachrens' story but did not interdict foreclosure. The McCachrens were entitled to no more.

AFFIRMED.