**J.C. BASS, Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants-Appellees.**

No. 83–4187.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1984.

Rehearing and Rehearing En Banc Denied Sept. 10, 1984.

Garwood, Circuit Judge, filed concurring opinion.

---

Thomas D. Kershaw, Jr., Klamath Falls, Or., for plaintiff-appellant.

J.C. Bass, pro se.

George Phillips, U.S. Atty., L.A. Smith, III, Asst. U.S. Atty., Jackson, Miss., for defendants-appellees.

Before THORNBERRY, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In a trial before a jury, plaintiff J.C. Bass sought to prove that officials of the Farmers Home Administration (FmHA) violated his Fifth Amendment due process rights by refusing to make continued loans to him under the FmHA Emergency Loan Program. The jury rendered a verdict for the defendants. On appeal, Bass questions the court's instructions to the jury. He also contends that the court erroneously submitted questions of law to the jury. Finding no error, we affirm.

## I.

In 1975, Bass owned and operated a cattle farm in Amite County, Mississippi. At that time, he was receiving financing for the operation from the Southwest Mississippi Production Credit Association. In 1976, Production Credit Association decided to foreclose on Bass's loan obligations, causing Bass to file a petition for bankruptcy.

Pursuant to Bass's request, the FmHA agreed to take over the financing of his cattle farming operation. On December 1, 1977, FmHA closed a loan to Bass in the amount of the $409,300.[1] Bass's livestock, farm equipment, and real estate were pledged as security for the loan. The loan was made under FmHA's Emergency Loan Program, Amite County having been declared a disaster area in 1977 due to a drought in the summer of that year. As a result of the $409,300 loan, Bass was able to withdraw his petition for bankruptcy.

On May 12, 1978, FmHA granted Bass another operating expense loan in the amount of $16,000. On June 14, 1978, FmHA made a third operating expense

---

1. In order to be eligible for an initial loan, an applicant was required to show that he was unable to obtain credit on reasonable terms from other sources. In addition, he had to demonstrate that the loan was to be used to support a feasible farm operation, i.e., one that reasonably could be expected to generate repayment ability. In order to remain eligible for subsequent loans, a borrower had to maintain proper financial records, account for the mortgaged property, and submit financial records and cash flow statements to the FmHA at prescribed intervals.

Upon receiving an application for an emergency loan, the FmHA county supervisor obtained information on the prospective borrower to assist the county committee in evaluating the application. Within 30 days of receipt of the application, the county supervisor was required to submit the application to the county committee for its consideration.

The county committee was composed of three persons, two local farmers and a homemaker or business person. Although they were not FmHA employees, they were paid expenses for serving on the committee. The committee's function was to recommend approval or rejection of the loan application. The committee made recommendations only on the eligibility of an applicant, not on the feasibility of the farm program proposed by the applicant.

Approval by the county committee did not mean that the loan application automatically would be approved. If the committee recommended approval of the loan application, the county supervisor processed the loan application and submitted it to the state office for final decision. If the committee recommended rejection, the applicant was entitled to be informed of the reasons for the rejection. The applicant had the right to appeal the committee's decision to the state headquarters and the state director of FmHA.

The regulations governing the FmHA Emergency Loan Program as it was administered during the time period relevant to this lawsuit were codified at 7 C.F.R. 1900 et. seq. (1977–1979). In addition, trial testimony revealed that some of the procedures were based upon unwritten agency policy.

loan to Bass in the amount of $180,000. As a condition to receiving the $180,000 loan, Bass was required to maintain adequate records of his income and expenses.

In August 1978, Bass applied for yet another loan in the amount of $344,800. The county committee found Bass eligible for an additional loan of an unspecified amount. After this request, defendants Wesley Kent and Adrian Wood, FmHA representatives, visited Bass's farm. During the visit, they discovered that 79 cattle were unaccounted for. Kent and Wood informed Bass that he was not properly accounting for the cattle pledged as security for the outstanding loans. He was advised that the state office would have to be consulted before any additional loans could be made to him.

Bass was informed by letter dated October 11, 1978, that his proposal for a loan of $344,800 was rejected. Among the reasons given were that Bass had not properly accounted for cattle, that he had not been furnishing adequate financial records of sales and. expenses, and that the plan he proposed was not feasible because his acreage was not sufficient to support the number of cows and calves he proposed to put on it.

The agency officials proposed a smaller loan to Bass in the amount of $138,000 or, finally, $150,000. The officials advised Bass that no loan could be made until Bass furnished the records of his operation and an accounting for the 79 head of cattle. Bass complied with the latter requirement on November 28, 1978. The cattle inventory report he submitted showed that he had sold the 79 head of cattle. On that same date, the county committee reconsidered Bass's loan application in light of the information submitted by Bass on the security cattle. The committee reversed its decision of August 31, 1978, and recommended rejection of the application.

Wood wrote a letter to Bass on November 29, 1978, informing him of the committee's decision to reject his application. Bass appealed the county committee's decision to the state director. A review hearing was held on January 4, 1979. The only issue considered at the hearing was Bass's failure to account for the 79 head of cattle. The hearing officer recommended that Bass be considered for a loan if he could properly account for the proceeds he received from the sale of the cattle. Bass subsequently submitted a sworn statement stating that he had used the proceeds to pay for operating expenses. In light of the sworn statement, the hearing office recommended that Bass receive an additional loan from FmHA.

The committee subsequently certified Bass eligible for a loan on March 7, 1979. When Bass and Wood met to prepare the loan documents, Bass requested a loan in the amount of $1,096,310. Officials from the state office denied the loan request on the grounds that the farm plan submitted by Bass was not feasible. Ultimately, a loan in the amount of $150,000 was approved.

Bass filed this suit in the United States District Court in July 1980. The original complaint was superseded by an amended complaint filed in January 1983. Named as defendants were the Department of Agriculture; the Farmers Home Administration; Bob Bergland, former Secretary of Agriculture; Gordon Cavenaugh, former Administrator of FmHA; Mark Hazard, former Mississippi State Director of FmHA; Wesley F. Kent, District Director; L. Adrian Wood, former Amite County Supervisor of FmHA; and. David K. Smith, the then Amite County Supervisor of FmHA. The amended complaint averred that the defendants had deprived Bass of both his substantive and procedural due process rights guaranteed under the Fifth Amendment.

As to the substantive due process claim, Bass complained that the defendants had acted arbitrarily and capriciously by denying him the right to participate in and exercise his rights under the FmHA program. Specifically, Bass alleged, *inter alia*, that the defendants had arbitrarily reduced his loan request of August 1978 from $344,800 to $150,000; that the defend-

ants deceptively misled him into thinking that he would receive the $344,800 loan; and that the defendants deliberately used dilatory tactics in making a decision on the loan request, all to his economic detriment.

As to the procedural due process claim, Bass asserted that although he was given an administrative hearing to appeal the denial of the loan, the hearing was ineffectual because he was not informed prior to the hearing of the main issue to be discussed, i.e., his failure to account for property securing the prior loans, and because defendants refused to follow the decision of the hearing officer.

In response to Bass's complaint, the defendants asserted that they at all times had acted in accordance with FmHA instructions and regulations and that they had dealt with Bass fairly and impartially in making the loans available to him. The defendants also asserted that Bass was denied the requested loan because he had (1) demonstrated poor repayment ability; (2) failed to complete and submit feasible home and farm plans in support of his loan applications; (3) failed to account properly for property securing previous FmHA loans; (4) failed to cooperate with FmHA officials; and (5) reported farm operation expenses considerably higher than those of similar farm operations.

Prior to trial, Bass conceded that the United States Department of Agriculture, and the United States Farmers Home Administration were entitled to be dismissed as defendants as to any claim by Bass for monetary relief exceeding $10,000. Bass maintained, however, that he was entitled to injunctive relief against these two defendant agencies to prevent foreclosure on his loan obligations to the FmHA. At the close of Bass's case, the trial court granted directed verdicts in favor of defendants Bergland, Cavenaugh, Hazard, and Smith. At trial the jury returned a verdict in favor of defendants Kent and Wood. Ten days later, the trial court issued a memorandum opinion denying injunctive relief against the United States Department of Agricul-

ture and the FmHA. Bass filed timely notice of appeal.

## II.

The district court's instructions to the jury included the following:

[The plaintiff] must prove by a preponderance of the evidence that he had a property interest in the loan being applied for and which was denied him and that the individual defendant or defendants intentionally or recklessly violated his constitutional rights by depriving him of his property without due process of law, in order to recover a verdict against either one of these defendants.

\* \* \* \* \* \*

Conduct, of course, is not unconstitutional merely because it might harm a citizen. It is unconstitutional only if it violates a standard of care that was due Mr. Bass under the circumstances of this case.

\* \* \* \* \* \*

Plaintiff must prove culpability on the part of the defendants or either of them to recover on such a civil rights claim as made in this case against these two defendants.

You must find for the defendants if you find that that their actions were merely inadvertent or constituted simple negligence.

\* \* \* \* \* \*

[The] protection for federal officials against being held liable for money damages for violation of constitutional or federal statutory rights is called "qualified immunity." In order to have its protection it is the burden of each defendant to show—and the burden is on the defendant who is asserting this particular defense—to prove by a preponderance of the evidence that he is entitled to qualified immunity. As I have said, you are to decide only whether the defendant has established his entitlement to immunity if you have already concluded from a preponderance of the evidence that he has committed an act which under the

instructions I have given you would make him liable to the plaintiff.

\* \* \* \* \* \*

The second element of [the] qualified immunity defense ... requires the defendant to establish that he indeed believed in good faith that his actions were lawful at the time he acted.

Bass presents the following challenges to the court's instructions:

1. The trial court should not have submitted to the jury the question of whether Bass possessed a protected property interest in the requested loans; rather, the court should have ruled on this issue as a matter of law.

2. Since Bass was claiming a constitutional violation, the trial court should not have instructed the jury on standard of care.

3. Assuming *arguendo* the relevancy of the question of standard of care, the trial court erroneously instructed the jury that the defendants could be found liable for a constitutional violation only if they acted intentionally or recklessly.

4. The trial court should not have given an instruction on qualified immunity.

5. Even if an instruction on qualified immunity should have been given, the court's instructions permitted the jury to make a finding of qualified immunity based upon a subjective standard—i.e., the good faith belief of the defendants in the propriety of their actions—in contravention of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### III.

Appellees contend that Bass failed to preserve points 1, 4, and 5 for appeal because he did not object at trial to the court's instructions on these issues. Fed. R.Civ.P. 51. This Court has consistently held that assertions of error based upon the giving of or failure to give instructions will not be considered unless the complain-

ing party objects in the manner provided by the rule. *Delancey v. Motichek Towing Service, Inc.*, 427 F.2d 897, 900 (5th Cir. 1970); *Nowell v. Dick*, 413 F.2d 1204, 1211 (5th Cir.1969); *Guest House Motor Inn, Inc. v. Duke*, 384 F.2d 927, 928 (5th Cir. 1967).

■ Bass concedes that he failed to object to the court's instructions on points 1, 4, and 5. He contends, however, that these issues were preserved for appeal under the established rule that formal objection is not necessary if the trial judge was fairly apprised of the nature of the objection. *See, e.g., Williams v. Hennessey*, 328 F.2d 490, 491 (5th Cir.1964). As to point 1, Bass clearly failed to show, however, that he in any manner apprised the trial court of his objection to the court's submission to the jury the question of whether he possessed a property interest in the loans. Point 1 is waived.

As to points 4 and 5, regarding the court's instructions on qualified immunity, Bass contends that the discussion which took place in connection with the defendants' motion to dismiss adequately apprised the court of Bass's position on these two issues. During this discussion, Bass's counsel pointed out that in *Harlow v. Fitzgerald, supra,* 457 U.S. 800, 102 S.Ct. at 2739, 73 L.Ed.2d 396, the Supreme Court stated that "[i]f the law [is] clearly established, the immunity defense ordinarily should fail since a reasonably competent public official should know the law governing his conduct." In response, the district court acknowledged that the defendants "wouldn't have qualified immunity under any circumstances if they knew or should have known what the law was." The crux of Bass's argument to the court during this discussion was that if it were shown that the defendants had violated clearly established law, the defendants would be unable to rely upon qualified immunity as a defense.

In this discussion, Bass conceivably raised the question of whether an instruction on qualified immunity should be given. Even though he discussed *Harlow*, he did

not raise the question of the legal standard the jury should have been instructed to use in the event the court chose to give an instruction on qualified immunity. Nor did he question the content of the immunity instructions once they had been formulated. After the jury instructions were given, the court asked counsel for both sides if they had any objections to the instructions. Bass objected to the instruction on standard of care but made no objection to the immunity instructions.

■ Since the actual content of the immunity instructions was not objected to at trial, the issue was not properly preserved for appeal. We, therefore, do not address the argument raised by Bass in point 5. In view of the fact that Bass at least raised the question of whether an immunity instruction should be given, we do address point 4.

■ The record shows that Bass failed to prove as a matter of law that the defendants had violated clearly established law. Since a question of fact existed as to whether the defendants had violated clearly established law, the district court properly gave instructions on qualified immunity based on the contingency that the jury might find that the defendants had not violated clearly established agency regulations but nonetheless had violated Bass's Fifth Amendment due process rights. In the event the jury made such a determination, it then would have been required to consider whether the defendants were entitled to qualified immunity. Upon our review, we conclude, therefore, that the instruction on qualified immunity, point 4, was properly given. Its content, point 5, is not at issue.

■ Bass also urges this Court to review points 1 and 5 under the well-established rule that an appellate court may consider an issue raised on appeal which was not objected to at trial if the issue presents a fundamental error of law which is apparent on the face of the record and which would result in injustice if the error is not corrected on appeal. *Industrial Development*

*Board v. Fuqua Industries, Inc.*, 523 F.2d 1226, 1237 (5th Cir.1975). We have no such fundamental error on the face of the record here.

■ We will not reverse for an alleged error in the jury instructions if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case. *See, e.g., Eastburn v. Ford Motor Company*, 471 F.2d 21, 23 (5th Cir.1972). Our review of the entire record convinces us that the evidence presented at trial overwhelmingly supports the jury's verdict. We therefore conclude that any alleged errors in the jury instructions involved in points 1 and 5 were harmless and that no injustice resulted from the court's instructions as given.

### IV.

Bass properly preserved by objection the issue of standard of care, points 2 and 3. We, therefore, turn our attention to a discussion of this issue.

In its essence this case constitutes a challenge to administrative decisions which were based upon detailed administrative regulations and procedures. Bass undertakes to elevate this case above the level of administrative and judicial review of administrative action by alleging that the decisions made were not only erroneous, but unconstitutionally so. The constitutional issue is couched in a two-pronged attack on the court's instructions to the jury regarding the standard of care. Bass maintains the court should not have placed before the jury an issue on the standard of care. According to his contentions, traditional tort concepts defining standard of care have no place in actions where a constitutional violation is alleged. He maintains that "if there is a clear [constitutional] violation, it is inappropriate to ask how bad it was." As authority for this proposition, Bass cites *Rodriguez v. Ritchey*, 556 F.2d 1185, 1201 (5th Cir.1977) (dissenting opinion), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), where Judge Goldberg stated:

... Admittedly, one approach to measuring the agents' fourth and fifth amendment duty would be to press into service traditional tort concepts. We could ask whether the Constitution proscribes conduct that is negligent, grossly negligent, reckless, or intentional. Before we rush into a debate over which standard to adopt, however, a preliminary observation deserves emphasis.

Any attempt to give universal constitutional effect to a single standard would be misguided. Varying constitutional provisions serve distinct purposes. There is no reason to insist on uniformity in the standards those provisions impose upon government officials.

Judge Goldberg goes on to note that in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court held that a prison doctor's delivery of medical care violates the Eighth Amendment only if it constitutes "deliberate indifference", while in *United States v. Augurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976), the Court held that a prosecutor may run afoul of constitutional dictates when his conduct constitutes mere negligence. *Ibid.* Thus Judge Goldberg noted:

> I see no reason to attempt to catalog the various constitutional rights in terms of whether mere negligence would establish a violation. The important point is that the standards would vary.

*Ibid.*

It is clear that rather than support Bass's claim that mere negligent or erroneous conduct is sufficient to constitute a constitutional violation, Judge Goldberg's dissent in *Ritchey* upon which Bass relies merely emphasizes the fact that standards of care vary. By its recognition that the standards may vary, the dissent at the same time discounts Bass's contention that standard of care is irrelevant in cases where a constitutional violation is alleged.

■ What Bass's contention does not face is that if his view were to prevail, every case involving a discretionary administrative decision would automatically be-

come a constitutional case merely by allegation that the law was otherwise than the decision reached. Yet the entire issue in the judicial review of administrative action always is whether the administrative decision was erroneous. The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the "correct" administrative decision does not rise to the level of a constitutional violation.

■ Standard of care issues are constantly applied in cases involving constitutional claims. Bass's claim is without foundation in the law. We further conclude that the particular instruction given by the trial court—that the defendant's conduct had to be intentional or reckless in order to constitute a constitutional violation—was the proper standard in this case involving the application of complex administrative standards used to reach discretionary decisions.

In giving its instruction on the standard of care, the district court relied on *Beard v. Mitchell,* 604 F.2d 485 (7th Cir.1979). In *Beard* the plaintiff brought a civil rights action against FBI agent Mitchell alleging that the agent's reckless conduct during his investigation resulted in a deprivation of the plaintiff's brother's constitutional rights. The Seventh Circuit approved the court's instructions to the jury to find for the agent if it concluded that the agent's actions were merely inadvertent or negligent and that plaintiff had the burden of proving that the agent's personal acts were done either intentionally or with reckless disregard of the constitutional rights involved. *Id.* at 494. The court noted that in the context of a Fifth Amendment due process claim, conduct is only unconstitutional if it is violative of the standard of care due a citizen under a specific set of circumstances. *Id.* at 495.

*Beard* is in accordance with the established law. Most of the relevant cases

have involved actions brought by a plaintiff under 42 U.S.C. § 1983. In *Williams v. Kelley,* 624 F.2d 695, 698 (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981), a jail prisoner, while being subdued, died as a result of the defendant police officer's application of a choke hold. We found no § 1983 liability since the evidence showed that the officer was guilty of no more than "negligent performance of lawful custodial functions" which "did not constitute 'the sort of abuse of government power' that is cognizable under § 1983." In *Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982), we held that supervisory officials may be liable under § 1983 when their failure to supervise amounts to gross negligence or deliberate indifference. We find that the district court's instructions on standard of care were correct.

 This discussion also disposes of the challenge by Bass that when a government official violates his own agency's regulations there is a per se violation of due process. In general we have already answered this contention. Every time an agency decision is found to be legally erroneous upon review, it is found to be in violation of law or agency regulations. But such an erroneous decision does not constitute a per se violation of due process. Absent a showing of intentional or reckless disregard of the law, it is merely an erroneous and, therefore, reversible decision.

 We repeat our observation that the instructions to the jury and the verdict of the jury comport clearly with the facts of this case. These repeated loan decisions were based upon the application of detailed regulations with a large element of discretion in the decisions made. The frequent day by day decisions of the government in granting or denying citizen applications for aid are not automatically elevated to constitutional decisions. They are administrative decisions subject to a narrow standard of review. A court fulfilling the function of the judicial review of administrative action must decide whether the agency's decision was based on consideration of relevant fac-

tors and whether there has been a clear error of judgment. The court may not substitute its judgment for that of the agency. *City of Houston v. F.A.A.,* 679 F.2d 1184, 1190 (5th Cir.1982).

### V.

In sum, we hold that the district court correctly instructed the jury on the standard of care. We further conclude that the court was correct in giving the jury an instruction on qualified immunity. Because Bass failed to object to the other instructions which he now challenges on appeal, we do not address those issues.

AFFIRMED.

GARWOOD, Circuit Judge, Concurring:

I concur generally in Judge Williams' cogent opinion. I add these remarks only to state my understanding that we merely assume that, but do not determine whether, Bass' allegations sufficed to state a claim under the theory of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), on which he sought to ground his suit. The only constitutional rights, procedural or substantive, claimed by Bass are those under the due process clause of the Fifth Amendment. Equal protection, First Amendment and other constitutional claims are not presented. Bass' due process claim rests on the assertion of a property interest, and it appears that no liberty interest is implicated. Considering our decision in *McCachren v. United States Department of Agriculture,* 599 F.2d 655 (5th Cir.1979), the nature of the federal programs involved and the substantial discretion committed to those administering them, there is certainly a serious question whether Bass alleged any character of property interest. However, *McCachren* was not cited by either party to the court below, or to us, and counsel for the defendants informed us at oral argument that he was unaware of it. Accordingly, and in light of our affirmance, it is not inappropriate to pretermit consideration of this aspect of the case.