In the Matter of the Estate of JAMES H. MONTGOMERY, Deceased.

MARGUERITE MONTGOMERY, as Executrix of JAMES H. MONTGOMERY, Deceased, Appellant; EVERETT K. VAN ALLEN, Respondent.

(Argued November 23, 1936; decided December 31, 1936.)

*William MacFarlane* for appellant.

*Nicholas J. Weldgen* for respondent.

HUBBS, J. The claimant, Everett K. Van Allen, as attorney, entered into a contract with Marguerite Montgomery, as executrix of the will of James H. Montgomery, deceased, to perform certain services in the settlement of the estate for the sum of $5,000. Prior to the execution of that contract, he had performed some services for the estate but without agreed compensation. Prior to the death of the testator, he had acted as his attorney and held an unliquidated claim against his estate for services rendered upon which he claimed to be entitled to recover over $10,000. After the death of the testator, the executrix had caused the claimant to prepare her will and she had named him as executor therein. She also allowed his claim at $10,000. The value of the estate was in excess of $600,000. It was made up of real estate holdings first and second mortgages, leases, etc., on property in Rochester. Concededly, it was a situation involving very much work on the part of an attorney. The executrix was an old lady and it is apparent that she was not the easiest kind of a client. She refused properly to co-operate with the attorney in the liquidation of the estate. When the claimant had performed about five-sixths of the services contracted to be performed, the executrix discharged him and secured another attorney.

The findings are that the contract was not terminated

by mutual consent; that the executrix was not justified by the attorney's conduct or by the manner in which he performed his services in terminating the relation and that the discharge was without adequate cause. The Surrogate, as a conclusion of law, found that there was no breach of the contract by the executrix in terminating the contract.

At first it might seem that such conclusion of law is contrary to the finding of fact that the discharge was without adequate cause. It is, however, based on the ground that a client is permitted to discharge an attorney at any time without cause. In such a case the measure of recovery is based on the principle of *quantum meruit*, and the attorney must be paid for the services rendered. The question is how much he must be paid and on what principle his compensation must be adjusted. (*Matter of Dunn*, 205 N. Y. 398.)

On the other hand, an attorney who is discharged for sufficient cause has no right of recovery. (*Holmes* v. *Evans*, 129 N. Y. 140.)

In some jurisdictions the discharge of an attorney without cause gives the attorney a right of action for damages. (*Martin* v. *Camp*, 219 N. Y. 170, 175.)

In this jurisdiction we have adopted a different principle. Where an attorney engaged under a contract for a definite purpose and not under a general retainer is discharged without cause, he is entitled to recover on *quantum meruit* the fair and reasonable value of the services rendered, although the client is not compelled to pay damages as for breach of contract for exercising the right of discharge given by law. (*Martin* v. *Camp*, *supra*.)

In the case at bar the recovery allowed is upon the basis of *quantum meruit* without regard to the contract price, and the question for determination is whether the right of the attorney to recover is limited by the contract price of $5,000.

Thus far it has been decided that the discharge of the attorney canceled and annulled the contract and that the

contract having been canceled, it could not limit the amount of the recovery although it might be considered in fixing the amount of the reasonable value of the services rendered, the theory being that the cancellation could not be a half-way cancellation.

" It wholly stands or totally fails." (*Matter of Tillman*, 259 N. Y. 133; *Matter of Krooks*, 257 N. Y. 329.)

Under that theory, the contract price does not constitute a limitation on the amount of an attorney's recovery, although its effect may be to enhance the amount the client may be compelled to pay and in a certain sense penalizes the client for exercising a privilege given by law to discharge an attorney at will regardless of cause.

We are committed to the *quantum meruit* rule without limitation to the contract price in cases where the client voluntarily discharges the attorney. If the termination of the contract is, however, involuntary, as by the death of or disability of an attorney before his specific contract is performed, recovery for services rendered is limited to the contract price. (*Sargent* v. *McLeod*, 209 N. Y. 360.)

In such cases it is said the contract comes to an end without default by either party; therefore, that recovery should be limited by the terms of the contract.

In the case at bar, however, the client has voluntarily canceled the contract. Why should the attorney be bound by the contract which the client has voluntarily canceled and is no longer bound by?

" After cancellation, its [contract] terms no longer serve to establish the sole standard for the attorney's compensation." (*Matter of Tillman*, 259 N. Y. 133.)

" The contract has been canceled and its terms cannot establish the standard for compensation." (*Matter of Krooks*, 257 N. Y. 329, 332; *Lurie* v. *New Amsterdam Casualty Co.*, 270 N. Y. 379.)

*Matter of Snyder* (190 N. Y. 66) is authority for holding that the attorney is not limited by the contract price. (Cf. 3 Williston on The Law of Contracts, p. 2595.)

The first impression that there is something wrong with a rule that allows an attorney to recover upon *quantum meruit* more than the contract price, although he has only performed in part, disappears in this case when it is considered that other elements entered into the agreement which induced the attorney to make a contract to perform the work for less than a reasonable fee.

The application of the rule will work both ways, sometimes in favor of a discharged attorney and at other times in favor of a client. In determining the amount of recovery, the learned Surrogate has considered those facts and also the fact that the contract fixed the price to be paid for the services to be rendered under it. The evidence fully justified the Surrogate in fixing the fair and reasonable value of the services rendered at the sum allowed claimant.

The order should be affirmed, with costs.

LEHMAN, J. (dissenting). The respondent agreed to perform certain services for the sum of $5,000. Before the respondent had completely rendered the stipulated services the appellant retained another attorney and discharged the respondent. She had a right to do so even though the respondent committed no fault. A client " may at any time for any reason which seems satisfactory to him, however arbitrary, discharge his attorney." (*Matter of Dunn*, 205 N. Y. 398, 402.) " It follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract." (*Martin* v. *Camp*, 219 N. Y. 170, 174.) The client's obligation upon the discharge of his attorney is only to pay for the services rendered.

In this case the respondent had performed five-sixths of the services for which he was to be paid $5,000. The courts below have awarded as compensation for uncompleted services a sum greater than the price fixed by the parties for complete performance. The evidence shows

that the services rendered were in fact worth the amount which has been awarded to the respondent. The parties, however, had fixed a lower price. In fixing that price below the actual value of the stipulated services the respondent may have been moved by the hope that this retainer might lead to more profitable retainers in the future. The remuneration which the respondent under any circumstances could receive for services rendered under the contract could not exceed the contract price. Damages for wrongful discharge or breach of a contract for services are ordinarily the profits which might have been earned except for such breach. Because in this case the discharge was not wrongful but in accordance with an implied term of the contract, a judgment has been granted against the appellant for a larger amount than she could have been compelled to pay as damages for a wrongful discharge, and the respondent receives larger compensation than he could possibly have earned under the contract which he made.

A contract for services to be rendered by an attorney, like other " contracts for personal services requiring skill, which can only be performed by the person named, are * * * subject to the implied condition that the person designated shall be able to perform. If a lawyer dies before he has prosecuted to a judgment or settlement a litigation which he has undertaken to conduct for a certain compensation, his contract is at an end, because both parties must be supposed to contemplate the continuance of his ability to perform as a condition of the contract [citing cases] and the compensation agreed upon cannot be recovered by his representative under the agreement because he did not and his representative cannot carry out his agreement. The extent of the recovery permitted his representative is the full reasonable value of the services rendered under the contract, *not exceeding*, however, the sum or the rate fixed by it." (Italics are mine.) (*Sargent* v. *McLeod*, 209 N. Y. 360, 364.) It would seem that the measure of compensation to be allowed to an

attorney for incomplete performance of stipulated services should be the same in a case where the contract has been terminated by the client under a " term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause " (*Martin* v. *Camp, supra*), as in a case where the death terminates a contract which has been made " subject to the implied condition that the person designated shall be able to perform."

It is said that in this case the courts below have followed the rule formulated and applied by this court in *Matter of Tillman* (259 N. Y. 133, 135). " The client is entitled to cancel his contract of retainer but such an agreement cannot be partially abrogated. Either it wholly stands or totally falls. After cancellation, its terms no longer serve to establish the sole standard for the attorney's compensation." Together with other elements, they may, however, be taken into consideration as a guide for ascertaining *quantum meruit.* (*Matter of Krooks,* 257 N. Y. 329.) In *Matter of Tillman* and in *Matter of Krooks* the retainers were for contingent fees, and because " the value of one attorney's services is not measured by the result attained by another," and because one attorney does " not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar," the court held that the compensation which must be paid to a discharged attorney cannot be measured by or made contingent upon the success of the attorney retained in his place. The contract of the parties never provided for such measure or contingency.

Nothing there said and certainly nothing there decided is I think applicable to a case such as this. Here termination of the contract leaves intact the measure fixed by the parties for the compensation to be paid to the attorney, and neither reason nor authority in such case justifies a larger award of compensation to the attorney

for a part of the stipulated services than he would have earned if the contract had not been terminated. (Cf. *Prager v. New Jersey Fidelity & P. G. Ins. Co.*, 245 N. Y. 1.)

It is said in the prevailing opinion that application of the rule will work both ways, sometimes in favor of a discharged attorney and at other times in favor of a client. That is probably true, but whichever way it works, it works unfairly.

The order should be reversed.

CRANE, Ch. J., O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur with HUBBS, J.; LEHMAN, J., dissents in opinion.

Order affirmed.