GENTRY v. RICHARDSON.

5-1443                                                         309 S. W. 2d 721

Opinion delivered February 10, 1958.

Tom Gentry and Thorp Thomas, pro se, and James L. Sloan, of counsel, for appellant.

Kenneth Coffelt, Ben M. McCray and Fred Briner, for appellee.

GEORGE ROSE SMITH, J. This dispute centers upon the question of whether the appellant attorneys, Tom Gentry and Thorp Thomas, are entitled to act as coun-

sel for the appellee administrator in an action for the wrongful death of Billy Warren Brod. The probate court, by the order now under review, approved the administrator's employment of three other attorneys, Kenneth Coffelt, Ben McCray, and Fred Briner, and enjoined the appellants from acting further in the suit for wrongful death.

Billy Warren Brod, aged nineteen, was killed in a traffic collision on October 8, 1956. On October 15 the probate court appointed the decedent's father, M. L. Brod, as administrator of the estate and approved a contract by which Brod employed Gentry and Thomas to bring the action for wrongful death.

Three days later the decedent's nineteen-year-old widow, Linda Brod, filed a petition protesting the earlier appointment, which had been made without notice to her, and asserting her preferred right to nominate the personal representative. After a hearing on October 29 the court set aside its original order and appointed the widow's nominee, Gordon Richardson, as administrator of the estate. On appeal we sustained the widow's position in the matter and affirmed the order naming Richardson as personal representative. *Brod* v. *Brod,* 227 Ark. 723, 301 S. W. 2d 448.

A week after our decision on the first appeal Richardson, without notice to these appellants, presented to the probate court a motion asserting that two actions for wrongful death were pending in the circuit court — one brought by Gentry and Thomas and the other brought by the three attorneys whom Richardson had employed on the day of his appointment. In his motion Richardson asked that his contract with Coffelt, McCray, and Briner be approved, that he be authorized to dismiss the suit filed by Gentry and Thomas, and that the latter attorneys be prohibited from taking any further action for the administrator or for the estate. On the presentation of this motion the probate court entered an order granting the relief asked.

The appellants, in insisting upon the continuing validity of their contract with the original administrator,

rely upon that section of the Probate Code which provides that the removal of a personal representative does not invalidate his prior official acts. Ark. Stats. 1947, § 62-2203. The appellee contends in turn that the appointment of M. L. Brod was void and could not be the basis for a contract binding the estate.

We need not explore the merits of these contentions, for we are met at the outset by the fact that an administrator in succession undoubtedly has the power to substitute attorneys of his own choice for those already engaged. It is a fundamental characteristic of the attorney-client relation that the client always has the right to control the litigation and the consequent power to discharge the attorney, with or without cause. *Johnson* v. *Mo. Pac. R. Co.*, 149 Ark. 418, 233 S. W. 699. This principle should apply, and has in fact been applied, when the client happens to be the personal representative of an estate. *In re Montgomery's Estate*, 272 N. Y. 323, 6 N. E. 2d 40; *In re Dix' Estate*, 144 Misc. 494, 259 N. Y. S. 449. Hence it is clear enough that the contract between Brod and the appellants did not confer upon these attorneys a vested right to carry the proposed litigation to its conclusion.

It is also asserted that the appellants were deprived of a property right without due process of law, in that their contract of employment was terminated without notice to them or an opportunity for them to be heard. This contention raises what is really a twofold issue, which must be considered in its separate aspects. By its language the court's order is purely prospective in operation, restraining the appellants from taking further action as counsel for the estate. In this aspect the order, although entered without notice, does not involve a denial of due process. The administrator, as we have seen, had the power to discharge these lawyers, despite their protest. It may be doubted whether the probate court's approval was essential to the exercise of that power. See *In re Dix' Estate, supra,* and Ark. Stats., § 62-2208, with the appended Committee Comment. But in any event the appellants are not in a position to

complain without first showing that the want of notice prevented them from asserting a defense to the court's action. That showing has not been made.

On the other hand the court's order, although it does not purport to touch this subject, might be relied upon as a bar to the appellants' right to contend that a valid contract of employment had been wrongfully breached by the appellee. Upon this aspect of the case we agree that the appellants would be denied due process if the order were construed to deprive them of their rights without notice and without an opportunity for the assertion of their claim.

We therefore affirm the court's order, in its prospective aspect, without prejudice to any claim for compensation or for damages that the appellants may think it proper to assert. Such a claim has not yet been presented, nor could it be decided on the record before us. The contract by which Brod employed the appellants is not in evidence; we know nothing of its terms. If that agreement should be found to be valid and to have been wrongfully breached, a question might arise whether the appellants' damages should be measured by the value of their past services or by the net loss resulting from the breach. See *Berry* v. *Nichols*, 227 Ark. 297, 298 S. W. 2d 40. In this record there is no proof touching even remotely upon these issues, which are accordingly left open for future decision.

Affirmed.

HARRIS, C. J., and WARD and ROBINSON, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I desire to emphatically dissent to the holding of the majority, which, in my opinion, upsets established law and custom.

While Section 62-2208, Ark. Stats. (1947) Anno., authorizes a personal representative to employ legal counsel, a careful reading of the section seems to denote that it only has reference to handling the "ordinary" affairs of an estate, and I find nothing therein which authorizes a personal representative to enter into a contract with an

attorney for the prosecution of litigation on behalf of the estate. While it is true that a court will generally follow the preference of the personal representative in appointing an attorney to institute litigation, the actual appointment is the *act of the court,* and the attorney is without authority or protection when he proceeds to institute litigation on behalf of an estate without first having his employment approved by the court. I find nothing in the Probate Code contrary to *Carpenter* v. *Hazel,* 128 Ark. 416, 194 S. W. 225. There, Chief Justice McCulloch said:

"The contract between appellant and the administrator was not authorized nor approved by the probate court, nor did the probate court approve the issuance of letters of administration to Phillips.   &#42;   &#42;   &#42;

"The statute does not authorize an administrator, *without the consent of the probate court,*[1] to enter into a contract so as to bind the estate,   &#42;   &#42;   &#42;."

Here, appellants obtained the approval by the court of their contract;[2] they filed their suit, and, as far as the record shows, have diligently, and without fault or carelessness, discharged their duties as attorneys for said estate. The Probate court, without notice to the attorneys, or without a hearing, entered an order restraining appellants from further proceeding, apparently because an administrator in succession had been appointed, and this second administrator preferred different attorneys. There is probably not a lawyer in the state who, upon being asked

---

[1] Emphasis supplied.

[2] The "Order Approving Attorneys Employment" is found in the transcript of *Brod* v. *Brod,* 227 Ark. 723, 301 S. W. 2d 448, and recites as follows:

"On this day is presented to the court the oral petition of M. L. Brod, the duly appointed and acting administrator of the above estate, praying that the contract which he has entered into with Thorp Thomas and Tom Gentry for legal services be approved.

"The court being well and sufficiently advised as to all matters of fact and law arising herein doth find that said contract is necessary and that the services of said attorneys are necessary and that said contract is fair and equitable and should be approved.

"IT IS THEREFORE ORDERED AND ADJUDGED THAT the contract heretofore entered into by the Administrator of the above estate with Thorp Thomas and Tom Gentry is fair and (e)quitable, and that the fee to be paid said attorneys for the prosecution of the litigation upon behalf of the administrator is hereby approved.

"F. D. GOZA, Judge"

by a personal representative to serve as attorney for an estate, or to institute litigation on behalf of the estate, does not immediately prepare a petition, and order approving his employment, go forthwith to the office of the probate judge, and obtain his approval. The reason, of course, is obvious. *The probate court order is his protection,* guaranteeing that he will not be capriciously "fired" by the personal representative, and he may thereafter confidently proceed with his duties, knowing that he will be compensated so long as he properly represents the estate. Under the holding by the majority in the instant cause, there is no longer any reason for an attorney to obtain the approval of the court; it adds not one bit to his security, for the same court may, without any reason, set such order aside and appoint someone else. I have no doubt but that if the original administrator had contracted, with the approval of the court, to buy or sell property, repair buildings belonging to the estate, dispose of personal property, etc., this Court would have approved such acts under Section 62-2203, Ark. Stats. (1947) Anno. "* * * The removal of a personal representative after letters have been duly issued to him does not invalidate his official acts performed prior to removal. * * *" Though it is a contract for personal services, I strongly feel that an attorney's contract is equally worthy of protection.

While the majority opinion comments that appellee insists that the appointment of the original administrator was void, the merit of such contention is not considered in the opinion. For that matter, the appointment, in my opinion, was not void; at most, it was voidable, for certainly the administrator in succession, had he so desired, could have continued with the same attorneys without the necessity of further approval by the court.

The majority simply says "that an administrator in succession undoubtedly has the power to substitute attorneys of his own choice for those already engaged" and cite *Johnson* v. *Mo. Pac. Railroad Co.,* 149 Ark. 418, 233 S. W. 699. I do not see how this case is authority for the position taken in the opinion. Kathern King was administratrix of the estate of James E. King. She employed Jo Johnson as her attorney to institute suit against the Mo.

Pac. Railroad Company to recover damages for the benefit of herself, as widow. The employment was admitted, but Mrs. King later discharged Johnson, contending that he failed and neglected to diligently prosecute the claim. A different attorney was obtained, and the suit was settled for $8,500. Johnson intervened, claiming a lien for one-half of the settlement under his contract. Upon trial in the Circuit Court, the issue was whether Johnson had diligently prosecuted the claim, or had been discharged because of neglect and failure to diligently prosecute. The jury found for the defendant, and this Court concluded that the evidence was sufficient to sustain the verdict. In discussing Johnson's cause of action, Chief Justice Mc-Culloch, speaking for the Court, said:

"Mrs. King had an unqualified right to control her own litigation and to discharge her attorney, but she could not displace the attorney's lien by his wrongful discharge after the action was instituted to recover on the claim. * * *"

Further:

"* * * there can be no doubt of the right of a client to discharge an attorney who fails to prosecute the cause with reasonable diligence, for that is clearly the measure of an attorney's duty to his client. Any other rule would require a client to retain an attorney who was neglecting the cause and failing to proceed with proper diligence. * * *"

The majority further cite two New York cases as authority for applying the principle that a client has a right to discharge his attorney without cause even though the client happens to be a personal representative. Let it be pointed out, however, that the New York Court clearly said that an attorney wrongfully discharged was entitled to compensation on a *quantum meruit* basis, and in the case referred to in the majority opinion, *In Re Montgomery's Estate,* it was held that the attorney had been wrongfully discharged, and he was actually given more fee on a *quantum meruit* basis than he would have obtained under his contract. This matter was determined by the Surrogate Court because the New York statute did not give an

attorney, wrongfully discharged, a right of action for damages.

I have no quarrel with the principle that a client has a right to discharge an attorney without cause; in fact, I entirely agree, provided, *if such discharge be wrongful, the attorney has the right of recovery.* The majority affirm "without prejudice to any claim for compensation or damages that appellants may think it proper to assert." This apparently means that they may file suit on their contract or seek damages for breach of same. I am unable to follow this reasoning; certainly these appellants would be without the protection of the attorney's lien unless prior decisions are overruled or disregarded. This Court has previously said that the statute giving the attorney a lien upon his client's cause of action (which attaches to the judgment or final order in his client's favor) does not apply to suits by an administrator for the benefit of an estate. In *Carpenter* v. *Hazel, supra,* it was said:

"We are of the opinion that this statute has no application to suits by an administrator for the benefit of an estate of the decedent, for to give it that effect would constitute an invasion of the exclusive jurisdiction vested in probate courts by the Constitution."

In addition, these attorneys, though having filed their suit, and, as far as the record discloses, having performed every duty incumbent upon them, are, in my opinion, by the Court's action, precluded from any chance of recovery in that type of action. The attorneys were discharged *by the court*—not the personal representative—and it is not necessary to quote authority to the effect that a court cannot be sued for its official acts. In an action brought by these attorneys to enforce a lien, the administrator in succession would only have to present the order of the court discharging the attorneys, which order, it appears to me, would constitute a perfect defense.

It seems clear that any relief afforded must be obtained in the probate court, and I deem it entirely illogical to allow the court to discharge appellants, but to permit them, at some future time, to seek their compensation. It seems more logical to set the amount of their compen-

sation before, or at the time of, their discharge, which is our established and accepted procedure. It would also appear that this should be done in fairness to the new attorneys, who are entitled to know what portion, if any, of the recovery obtained by them, is to be turned over to appellants herein. As the matter stands, this question is left dangling.

Summarizing, I have pointed out that appellants, if previous decisions are followed, can have no claim for damages and no lien upon the proceeds of any recovery. *Carpenter* v. *Hazel, supra; Gilleylen* v. *Hallman,* 141 Ark. 52, 216 S. W. 15. They are limited to a claim for services which must be determined by the probate court. I am therefore of the opinion that, in the instant matter, the court should have conducted a hearing, and, dependent upon the evidence, either permitted appellants to continue with their employment under the contract, or permitted a *quantum meruit* recovery for services rendered.[3] I feel that the action of the majority takes away the protection that should be afforded every attorney who handles the affairs of his client in a diligent manner, and who is thus due just compensation.

---

[3] Of course, if the evidence established that appellants had been derelict in their duties, they would not be entitled to compensation at all.