SAMUEL FINKELSTEIN et al., Doing Business as FINKELSTEIN & ROBINSON, Respondents, v GLORIA S. KINS, Appellant.

First Department, February 10, 1987

### APPEARANCES OF COUNSEL

*Edward O. Howard* and *John W. E. Bowen, IV* of counsel *(Howard & Rhone,* attorneys), for appellant.

*William Finkelstein* of counsel *(Miriam M. Robinson* with him on the brief; *Finkelstein & Robinson,* attorneys), respondents *pro se.*

### OPINION OF THE COURT

FEIN, J. P.

The issue in this action by a firm of attorneys against a client is whether the attorneys are entitled to recover in quantum meruit an amount in excess of the bill rendered and in excess of the agreed upon fee because defendant client has failed to pay plaintiffs' bills as rendered and claims them to be excessive.

This is not a case in which plaintiffs' services were terminated. They completed their services and there was a subsequent dispute as to the amount of the bills rendered. No authority has been found, and none is cited, in support of the proposition that when an attorney has completed his services and has rendered a bill, he may sue in quantum meruit for an amount in excess of the bill. Nor is there authority for the doctrine that an agreed upon fee may be increased because the client has delayed payment.

The authorities relied upon by plaintiffs in this action, and in the dissent, are all cases in which the attorney's services were terminated prior to completion. In those cases it was held that although the retainer agreement may be relevant in determining the fee to which the attorney is entitled, it is not dispositive. The client's right to terminate the attorney's services is well settled, but if he does so he must pay for the reasonable value of the attorney's services up to the time of termination, even though the fee may exceed that called for in the agreement.

Thus, in *Matter of Tillman* (259 NY 133, 135), where the agreed upon compensation was to be 3% of the proceeds and the attorney's services were terminated before the litigation was completed and a substitution of attorneys was directed by the court, the principle is stated as follows: "The client is entitled to cancel his contract of retainer but such an agreement cannot be partially abrogated. Either it wholly stands or totally falls. After cancellation, its terms no longer serve to establish the sole standard for the attorney's compensation. Together with other elements they may, however, be taken into consideration as a guide for ascertaining *quantum meruit.* (*Matter of Krooks,* 257 N. Y. 329.) The value of one attorney's services is not measured by the result attained by another. This one did not contract for his contingent compensation on the hypothesis of success or failure by some other member of the bar."

Similarly, in *Matter of Montgomery* (272 NY 323), cited in the dissent, an attorney for the executrix of a will was discharged after he had performed about five sixths of his contracted services. It was held that the attorney was entitled to recover in quantum meruit and not on the basis of the contract price. The court stated (at pp 326-327):

"Thus far it has been decided that the discharge of the attorney canceled and annulled the contract and that the

contract having been canceled, it could not limit the amount of the recovery although it might be considered in fixing the amount of the reasonable value of the services rendered, the theory being that the cancellation could not be a half-way cancellation.

" 'It wholly stands or totally fails *[sic].' (Matter of Tillman,* 259 N. Y. 133; *Matter of Krooks,* 257 N. Y. 329.)

"Under that theory, the contract price does not constitute a limitation on the amount of an attorney's recovery, although its effect may be to enhance the amount the client may be compelled to pay and in a certain sense penalizes the client for exercising a privilege given by law to discharge an attorney at will regardless of cause."

Similar is *Matter of Goldin* (104 AD2d 890), also relied upon in the dissent, where the attorney was retained by an estate upon an agreed fee of $10,000. He was discharged without cause and a new attorney was substituted to complete the administration of the estate. The court ruled (at p 891): "We now reverse and remit the matter to the Surrogate's Court for a new hearing to determine the fair and reasonable value of appellant's services. While it is a fundamental right of a client to discharge his attorney without cause at any time, the discharged attorney is ordinarily entitled to recover in *quantum meruit* for the fair and reasonable value of his services up to the point of his discharge (see *Demov, Morris, Levine & Shein v Glantz,* 53 NY2d 553; *Matter of Montgomery,* 272 NY 323). Importantly, when the discharged attorney seeks recovery in *quantum meruit,* he is not limited by the terms of his original retainer agreement *(Matter of Montgomery, supra).* Indeed, at bar, the only evidence presented at the original hearing—by appellant and his expert witness—regarding the value of the services performed, indicated that the value of those services was well in excess of the amount set in the original agreement." To the same effect is *Matter of Krooks* (257 NY 329), a contingent fee case, where it was held that the discharge of the attorney before the services were completed, permitted recovery in quantum meruit.

In accord is *McAvoy v Schramme* (238 App Div 225, *affd* 263 NY 548), also a contingent fee case, where this court stated (at p 228): "It is well established that a client may discharge his attorney at any time for any reason he deems sufficient. In such circumstances the attorney is relegated to an action for the reasonable value of his services, unless he has fully

performed his contract. In the event of full performance prior to discharge, however, the attorney may stand upon his contract and the measure of his damages is the agreed value of his services." This court has so ruled in *Kronish, Lieb, Shainswit, Weiner & Hellman v Howard Stores Corp.* (44 AD2d 813, 814): "And further, contrary to the claim of defendant, where a lawyer is discharged voluntarily by a client, the lawyer may sue in *quantum meruit.* He is not limited to the amount he would have been entitled to under a retainer. *(MacAvoy [sic] v. Schramme,* 238 App. Div. 225, affd. 263 N. Y. 548.) When services of the attorney are incomplete at the time of discharge, the lawyer is relegated, as a matter of law, to a suit in *quantum meruit. (MacAvoy [sic] v. Schramme, supra.)* The record on this appeal discloses that there is, at the very least, a question of fact as to when or if the plaintiff law firm was discharged by defendant's house counsel and the status and worth of the firm's services. Even if the services, for which the plaintiff was retained, had been completed prior to discharge, the plaintiff would still be entitled to sue in *quantum meruit. (MacAvoy [sic] v. Schramme, supra;* see, also, the majority opinion by Hubbs, J., in *Matter of Montgomery,* 272 N. Y. 323, 327, erroneously cited by Special Term in support of its opinion.)" To the same effect is *Zimmerman v Kallimopoulou* (56 Misc 2d 828).

In this case it is undisputed that the attorneys were not discharged. After the client had been billed, she raised questions as to the amount of the bill and made limited payments on account. Under these circumstances, there is no authority which supports the recovery of a fee in excess of the amount billed. Attorneys have no greater rights than those who render other services or sell other products. Absent express agreement, there is no right to increase the bill because of nonpayment. Nor does the assertion that the order granting summary judgment authorizes such recovery have any footing in the case authorities or in the record.

As the dissent notes, Justice Wright's order granting summary judgment is not contained in the record. However, it was apparently before the court and is quoted, in pertinent part, in plaintiffs' brief, as follows:

"In opposition to the motion, defendant does not dispute that plaintiffs did provide legal services to her; defendant does, however, disagree with 'the magnitude of plaintiff's bills.[']

"Plaintiffs' motion is granted to the extent that plaintiffs are granted summary judgment against defendant on the issue of liability. An assessment shall be held to determine the amount of the judgment."

There is simply no foundation in the record for the dissent's assertion that this order authorized a recovery on the second cause of action in quantum meruit of an award in excess of the bill and the agreed upon fee. Since defendant challenged the size of the bill, it was proper in granting summary judgment on liability to direct an assessment. This provided a basis for proving the reasonableness of the bill, not for a judgment in excess of the bill and in excess of the agreed fee for the appeal which the dissent apparently approves.

It was equally necessary for an assessment to determine the amounts which had been paid, which were in dispute, as the dissent concedes.

The grant of summary judgment as to liability in no way authorized recovery in excess of the billed amounts. Obviously, the issue of liability was correctly decided. An assessment was properly directed because of the disputed issues. This imported no obligation to pay more than the billed and agreed upon amounts. Nor could it do so. There is no basis for the suggestion in the dissent that defendant's failure to appeal from the order bars her from raising the issue now. There was nothing for her to appeal from. As the order states, the liability found was conceded. Defendant disputed only "the magnitude of plaintiff's bills". The surviving issue as to the reasonableness of the bill required the assessment which was directed.

The first cause of action expressly alleges that it is brought to recover the amounts billed for the agreed services and for the fee agreed upon for responding to a subsequent appeal. Thus, plaintiff could not be surprised, as feared by the dissent, by the conclusion that recovery must be limited by the amount billed and amount agreed upon for the appeal. The first cause of action plainly asserts this basis for recovery.

Paragraph FIFTH of the complaint alleges that on April 7, 1982 plaintiffs rendered a bill for all services performed prior to that date, for which payment had not been made. The bill was in the amount of $55,000. The complaint alleges two payments on account—one in the sum of $1,000 in December 1982 and another in the sum of $3,000 in February 1983, leaving a balance of $51,000. The complaint claims an additional sum for interest accrued.

In paragraph SEVENTH the complaint further alleges that after rendition of the bill and the two payments made on account, in June 1983 defendant retained plaintiffs to handle the appeal at an agreed cost of $6,500, exclusive of disbursements. This would leave a balance due of $57,000 plus interest, against which plaintiffs admitted, in the complaint and at the trial on damages, that payments of $12,000 were subsequently made, leaving a balance due of $45,500, plus interest from July 1, 1983.

The evidence amply supported plaintiffs' right to recover the amounts billed and the agreed upon fee for the appeal. The obligation of the court to insure that the fee was fair and reasonable was discharged by directing the assessment.

It is noted that on the trial, plaintiffs asserted that they were entitled to $7,500 for the appeal, although they admitted the agreed upon fee was $6,500. It is further notable that defendant contended that the $6,500 for the appeal was based upon the expected services of Miriam M. Robinson to handle the appeal, but that the appeal was actually handled by an employee of plaintiffs' office for a fee of $1,000 which was added to the $6,500 claimed by plaintiffs, and allowed by the court in the judgment appealed from. No lawful basis whatsoever justifies the additional $1,000 in excess of the agreed upon fee for the appeal.

Accordingly, the judgment, Supreme Court, New York County (Burton Sherman, J.), entered November 12, 1985, which awarded plaintiffs the sum of $62,500 with interest from July 1, 1983 should be modified on the law and the facts, to award plaintiffs the sum of $45,500 with interest from July 1, 1983, and otherwise affirmed, without costs.

WALLACH, J. (dissenting). I have no quarrel with the proposition that when an attorney and client reach agreement as to the value of the services to be rendered by the attorney, the attorney, upon completion of those services, can recover a fee only in the amount agreed upon, i.e., his remedy is in contract, not quantum meruit. The possibility that there are exceptions to this rule applicable to this case is not the reason for my dissent. I dissent because the majority does not give effect to a prior order which, I contend, established plaintiffs' right to recover in quantum meruit. In limiting plaintiffs to a contract remedy, the majority, in effect, reverses a prior order from which no appeal was taken, and which, more importantly, is neither argued nor included in the record. Thus,

even if the order in question can be said to necessarily affect the judgment from which the appeal is taken (see, CPLR 5501 [a] [1]), its omission from the record makes review impossible, and because unreviewable, the possibility, or even probability, that it was incorrectly decided is legally irrelevant. And, to the extent that the majority finds that the record compels the conclusion that the prior order adjudicated a right to recover in contract, to the same extent I would find that the record compels the conclusion that the prior order adjudicated a right to recover in quantum meruit.

The complaint contains two causes of action. The first alleges defendant's hiring of plaintiffs in April 1978 to perform legal services of a matrimonial nature; plaintiffs' performance of those services; the rendering of a bill by plaintiffs in April 1982 in the amount of $55,000 for trial-related services; payment by defendant of $1,000 in December 1982 and $3,000 in February 1983; defendant's hiring of plaintiff in or about June 1983 to perform "additional" services necessitated by an appeal taken by the adverse party in the matrimonial action; an agreement between the parties fixing plaintiffs' fee for such appellate services in the amount of $6,500; payments by defendant since June 1983 totaling $12,000; and nonpayment by defendant of the balance. The second cause of action alleges plaintiffs' performance of legal services on behalf of defendant having a "fair and reasonable value" of $100,000. Defendant's answer denies all of the allegations of the complaint, and contains an affirmative defense of lack of jurisdiction not in issue on this appeal.

At some point after joinder of issue plaintiffs moved for summary judgment, which motion was partially granted on the issue of liability. We know this because plaintiffs represent it to be so in their brief, and also because the record shows that the Trial Judge understood the matter to be an "assessment" "directed by order of [Special Term]". Neither Special Term's order, nor the papers underlying it, are in the record. Plaintiffs do quote a portion of the order in their brief, which portion is set out in full in the majority opinion, but I do not find the language quoted helpful in ascertaining whether it was on the first or second cause of action that judgment was granted, and would not, in any event, rely upon a brief to fill in a gap in the record relating to the content of an order.

In due course, presumably pursuant to CPLR 3212 (c) providing for an "immediate trial" on the issue of damages when

summary judgment is granted on the issue of liability, the case was assigned to a Trial Part. The Trial Judge, viewing the matter before him as an "assessment", proceeded to take proof as to the reasonable value of the services rendered by plaintiffs. That proof consisted of plaintiffs' testimony, and the testimony of another attorney claimed to have expert knowledge of local prevailing rates for services rendered by attorneys of plaintiffs' standing in the matrimonial bar. At the conclusion of the hearing, the Trial Judge rendered an oral decision assessing the various services performed by plaintiffs, and granting judgment in an amount representing the total of those assessments less what he found to be the total of the payments made by defendant on account of the services assessed.

The majority, taking a different view of the matter, does not review the accuracy of the valuations assigned by the trial court to plaintiffs' services, but instead holds plaintiffs bound by the bill they rendered in April 1982 with respect to their trial services (which bill, presumably, reflected a fee agreement previously reached by the parties), and by the agreement they reached with defendant in June 1983 with respect to the appeal. The judgment awarded by the majority represents the total of these two items, less the amount they find to have been paid by defendant on account. In approaching the matter in this way, the majority takes everybody by surprise. They completely undercut plaintiffs, whose proof at trial proceeded, and whose argument on appeal proceeds, entirely on the assumption that the reasonable value of their services is the measure of their fee. And defendant, for her part, would be the last to consider herself vindicated by the majority's approach. Defendant's main contention at trial was that she was misled by plaintiffs into believing that the total amount of their fee would fall somewhere between $5,000 and $10,000, or that plaintiffs were, at the least, ethically lax in not making clear to her at the outset of the attorney-client relationship what the basis of their fee would be; on appeal, defendant's argument is mainly to the effect that the trial court's decision is deficient under CPLR 4213 (b) for failing to make findings of fact responsive to those contentions.

Since the order granting partial summary judgment is not in the record, it cannot be known with certainty whether the "assessment" directed therein was addressed to the first cause of action, setting forth a contract theory, or the second cause of action, setting forth a quantum meruit theory. I do think,

however, that it can be safely said that it was not Special Term's intention to grant summary judgment on both causes of action. Given the same underlying facts, contract and quantum meruit are inconsistent remedies in that once the existence of an express contract is established by admission of the parties or finding of the court, an action in quantum meruit cannot lie (*Jontow v Jontow,* 34 AD2d 744; *Foster v White & Sons,* 244 App Div 368, 371, *affd* 270 NY 572; *Miller v Schloss,* 218 NY 400, 406-407 ["A contract cannot be implied *in fact* where * * * there is an express contract covering the subject-matter involved"]).

Thus, although the complaint purports to state two separate causes of action, one in contract and the other in quantum meruit, in truth, there is only one cause of action for services rendered setting forth two alternative methods for computing damages. In granting partial summary judgment, Special Term determined that plaintiffs are entitled to be compensated for these services; of necessity, it had to also decide how such compensation was to be computed. Otherwise, the immediate Trial Part to which the case was referred for an "assessment" would not have known how to perform that which it was directed to do. It would have been altogether improper for Special Term to grant judgment on liability while leaving it to the immediate Trial Part to decide whether that liability was to be measured in contract or quantum meruit.

The question remains—on which cause of action did Special Term grant judgment? The indications are compelling that it was on the second cause of action for quantum meruit. Attorneys are free to enter into fee agreements with clients (Judiciary Law § 474). Notwithstanding this freedom to contract, the courts, as a matter of public policy, pay particular attention to fee arrangements between attorneys and clients (*Jacobson v Sassower,* 66 NY2d 991, 993; *see, Murray v Waring Hat Mfg. Co.,* 142 App Div 514). Should a fee dispute arise between an attorney and client, an attorney relying on a fee contract has the burden of showing that it was fair, reasonable, and fully known and understood by the client (*Jacobson v Sassower, supra*). Therefore, to the extent that it may have been the first cause of action in contract that plaintiffs pressed on their motion for summary judgment, it was incumbent upon Special Term to pass upon the fairness and reasonableness of the contract alleged, if challenged by defendant. Such an inquiry could have found issues of fact warranting a trial. But, if such issues had been found to exist, as the majority believes

they were, the validity of the contract alleged would have been rendered problematical, and summary judgment holding defendant liable thereon would not have been granted *(see, Smitas v Rickett,* 102 AD2d 928; *Baye v Grindlinger,* 78 AD2d 690).* In other words, the very fact that Special Term granted judgment on the issue of liability precludes the possibility that the "assessment" it directed was for the purpose of inquiring into whether the bill and contract alleged in the first cause of action was fair, reasonable and fully understood by defendant.

Nor could the assessment have been directed for the purpose of liquidating plaintiffs' damages on a contract-based cause of action. If indeed it was Special Term's intention to grant judgment on the contract cause of action, it would have simply made the arithmetic calculations the majority makes, and directed entry of judgment for a sum certain. The only conceivable purpose a trial on the contract cause of action could have served was ascertainment of the exact amount of defendant's payments on account. But if that were the only issue necessitating a trial, surely Special Term would have framed it, and conserved the energies of all involved. Certainly, neither the parties nor the immediate Trial Part viewed Special Term's order as so limited.

It follows that the immediate trial directed by Special Term had to have been for the purpose of assessing the reasonable value of plaintiffs' services, i.e., as a follow-up to a finding of liability on the second cause of action for quantum meruit. Right or wrong, this finding of liability in quantum meruit made law of the case which constrained the immediate Trial Judge and, given the state of the record, constrains us as well. This being so, any promises or statements plaintiffs may have made concerning their fee should be given no legal effect except as some evidence of the value of the services rendered *(Matter of Tillman,* 259 NY 133, 135; *Matter of Montgomery,* 272 NY 323; *Matter of Goldin,* 104 AD2d 890).

Proper review of the judgment appealed from herein calls for an examination of the trial record for the purpose of determining the accuracy of the Trial Part's assessment of plaintiff's services. Such a review is precluded by the majority's holding that plaintiff's right to compensation sounds in contract, not quantum meruit.

MILONAS and ROSENBERGER, JJ., concur with FEIN, J. P.; ELLERIN and WALLACH, JJ., dissent in an opinion by WALLACH, J.

Judgment, Supreme Court, New York County, entered on November 12, 1985, modified, on the law and the facts, to award plaintiffs the sum of $45,500, with interest from July 1, 1983, and otherwise affirmed, without costs and without disbursements.