OPINION OF THE COURT
Lee L. Holzman, J.
*418 In this proceeding to judicially account for a $50,000 wrongful death action settlement, the only issue presented is whether the objectant, who represented the administratrix in the underlying wrongful death action (this case) prior to his disbarment, is entitled to any compensation for the legal services that he rendered before the law firm presently representing the administratrix (the law firm) became the plaintiffs counsel. A bench trial was held.
The law firm concedes that when it agreed to be substituted as counsel in place of the objectant in this case and others, it also agreed to pay one third of the legal fee it received in this case to the objectant. Although the law firm does not assert that the objectant’s representation of the administratrix in this case was an issue in his disbarment proceeding, it contends that the objectant was guilty of the following transgressions in this case: (1) he failed to prosecute the case in a timely manner or to conduct any meaningful pretrial discovery; (2) he filed misleading and inaccurate papers in the Supreme Court, Queens County; and (3) he misrepresented to the law firm at the time of their agreement that this case was scheduled for an inquest hearing.
The law firm decided that in light of the inordinate delays in the prosecution of this case and the objectant’s failure to pursue meaningful disclosure devices, it would not be appropriate for either its firm or the objectant to receive any legal fee. Consequently, in the accounting proceeding, the law firm and the administratrix took the position that no legal fee should be paid to any attorney based upon the objectant’s conduct in representing the administratrix in this case, and the law firm requested reimbursement only of disbursements.
The objectant argues that the law firm might be able to waive its portion of the legal fee but it has no right to waive his portion of the fee. Accordingly, the objectant argues that either he should receive one third of the amount that should have been awarded to the law firm pursuant to its one-third contingent fee retainer agreement with the administratrix, or he should receive 95% of that amount on a quantum meruit basis because the law firm breached its agreement with him by failing to pay his one-third share. The objectant asserts that there is no basis to deny him compensation in light of the valuable services he rendered. The court entered an interim decree providing that a sum sufficient to pay the maximum amount claimed by the objectant be held in escrow and directing distribution of the balance of the settlement proceeds as requested.
*419 The evidence adduced at the hearing reveals that most of the facts are not in dispute. The decedent died on January 5, 1993, as a result of injuries he sustained when a stolen automobile, while fleeing from the police, crashed into the decedent’s vehicle. The decedent’s sole distributee, his son, was then two years of age. The infant’s mother retained the objectant two days after the decedent’s death. The objectant filed a notice of claim with the City of New York in 1993 and the complaint against, inter alia, the City of New York and the New York City Police Department was filed in the Supreme Court, Queens County, on April 27, 1994.
This case progressed at a snail’s pace thereafter. The object-ant prepared a demand for “discovery and inspection” dated July 14, 1995. When the defendants failed to respond to the demand, the objectant filed a motion to strike the defendants’ pleadings. This application was originally denied; however, on June 2, 1997 the Appellate Division, Second Department, reversed and conditionally granted the motion to strike, holding that the “answer of the defendants . . . shall be stricken unless, within 30 days after service of a copy of this order . . . they serve a response” (Ashley v City of New York, 240 AD2d 352, 352 [1997]).
It appears that, thereafter, the defendants complied with some of the requested disclosure but took the position that the balance of the request was not proper. In any event, it was not until five years after the June 2, 1997 order of the Appellate Division, Second Department, that the objectant served a motion seeking, inter alia, to strike the defendants’ answer for failure to comply with the June 2, 1997 order and the defendants cross-moved, inter alia, for an order of preclusion based upon the plaintiffs failure to prosecute the action and for a protective order with regard to some of the discovery documents demanded. In a decision and order dated December 18, 2002, Justice Phyllis Plug, of the Supreme Court, Queens County, denied the motion and cross motion, and directed that a note of issue be filed immediately and that all disclosure be completed within 30 days thereafter. It is apparent that the objectant failed to comply with this order as the objectant prepared an application returnable on April 19, 2005 to have the case restored to the trial calendar. Thereafter, based upon the objectant’s affirmation dated January 17, 2006, the plaintiff once again moved to strike the defendants’ answer for their purported failure to comply with the June 2, 1997 order of the Appellate Division, *420 Second Department. Notwithstanding that the objectant withdrew this last motion, on March 21, 2006, he filed a “Notice for Trial” setting the matter down for “Damages Only” as “Defendants’ answer is Stricken.”
The law firm replaced the objectant as the attorney for the plaintiff in August 2006. The parties agree about the events leading up to the substitution of counsel. Specifically, the law firm and the objectant entered into negotiations for the sale of the objectant’s law practice. The objectant told the law firm that he was retiring to Florida due to his wife’s poor health. The law firm did not ask and the objectant did not- volunteer that he had tendered his resignation as an attorney in an affidavit dated May 18, 2006, in which he indicated that he was aware both that he was barred from seeking reinstatement for at least seven years and that he was under investigation for his submission of false and misleading answers and documents that were altered in connection with two pending complaints of professional misconduct (see Matter of Finkelstein, 39 AD3d 120 [2007]). In fact, the objectant was disbarred on February 13, 2007 (id.). In any event, while the disbarment proceedings were in progress, the law firm and the objectant entered into a written agreement on August 29, 2006 relating to this and over 30 other cases. With regard to this case, the agreement specifically stated that “an inquest is pending” and that the objectant “will receive 331/s% of the attorney’s fee for work already performed.”
The partner who testified on behalf of the law firm stated that the law firm would not have entered into the agreement with the objectant had the partners known that the objectant was on the brink of disbarment. More importantly, with regard to this case, the law firm agreed to pay the objectant one-third, rather than a smaller percentage, based on the objectant’s representation that all that remained to be done was to establish damages at an inquest hearing. Thereafter, the law firm ascertained that an inquest hearing could not be conducted because the “Notice for Trial” filed with the Clerk’s Office falsely stated that the defendants’ answer was stricken. Moreover, the law firm discovered that the objectant neglected this case in the more than 13-year period that he represented the-plaintiff. The witness opined that obtaining any recovery in an action involving injuries arising from a pursuit by law enforcement is always a difficult task (see Saarinen v Kerr, 84 NY2d 494 [1994]), and here, it was close to impossible to obtain a recovery at trial because the objectant never deposed any police *421 personnel or eyewitnesses. This witness concluded that the $50,000 settlement was offered only because of the law firm’s good reputation and the very substantial damages that might be recovered in the unlikely event that liability could be established.
Not surprisingly, the objectant viewed his representation of the plaintiff much differently. He testified that he was aware of the holding in Saarinen v Kerr (84 NY2d 494 [1994]) shortly after that case was decided, and he told the plaintiff that the only hope for a recovery was if the Court of Appeals later modified the standard for imposing liability in a police pursuit case. Thus, the objectant employed a strategy designed to keep this case pending as long as possible. The objectant conceded that the statements in the “Notice for Trial,” that the defendants’ answer was stricken and the matter was ready for an inquest, were inaccurate. Nonetheless, he justified the representation to the law firm that the case was ready for an inquest on the grounds that the notice was accepted by the clerk for filing and that the defendants’ counsel was served with the notice and failed to seek any relief with regard thereto. The objectant also faulted the law firm for its failure to more closely examine the entire history of the.case before it entered into the agreement with him. The objectant concluded that but for his representation there would have been no recovery.
Usually, where new and prior counsel agree at the time of substitution of counsel as to the portion of a contingent fee that each of them will receive in the event that the plaintiff ultimately prevails, the terms of the agreement will be binding upon them (see Matter of Cohen v Grainger, Tesoriero & Bell, 81 NY2d 655 [1993]). It is also true that “all contracts imply a covenant of good faith and fair dealing in the course of performance” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [citations omitted]). Thus, if the law firm opted not to take any fee in this case solely to deprive the object-ant of his share of the fee because it was upset with the object-ant about other matters, the court might very well hold that the objectant would be entitled to one third of the one-third contingency fee. Nonetheless, the court does not find this to be the case.
The objectant’s representation of the plaintiff in this case for a period of more than 13 years calls for condemnation, not compensation. The objectant obtained a retainer agreement with alacrity, two days after the decedent’s death; however, dur *422 ing the entire period of his representation of the plaintiff he never requested that any person be deposed. The court concurs with the law firm’s conclusion that the objectant, in violation of the rule enunciated in former Code of Professional Responsibility DR 6-101 (22 NYCRR former 1200.30), and now enunciated in Rules of Professional Conduct (22 NYCRR 1200.0 [eff Apr. 1, 2009]) rule 1.3 (b), neglected this legal matter entrusted to him. The law condones reasonable delays based upon the need for time to assemble proof that is difficult to acquire or, perhaps, to wait for a case pending before another court to be decided in the near future. Unfortunately, the objectant had no such good cause for delay. Instead, there came a point in time that the objectant’s only tactic was to first make frivolous applications and ultimately to file a “Notice for Trial” which he knew contained the false statement that the defendants’ answer was stricken. He knew this statement was false because the penultimate motion he filed seeking this relief was denied and he withdrew the last motion he made for the same relief. Clearly, the filing of frivolous and false papers in the hope that in the indefinite future the standard for liability in a police pursuit case might be modified is not a substitute for a rigorous effort by counsel to ascertain all of the facts by use of depositions and other disclosure devices in an attempt to establish that the holding in Saarinen v Kerr (84 NY2d 494 [1994]) was not controlling on the facts of this case. In short, the objectant’s chicanery does not obfuscate the fact that he neglected the case and that he never made a legitimate effort to win the case on its merits.
Accordingly, the court holds that the law firm correctly concluded that no legal fee should be charged in light of the fact that the case was neglected for well in excess of a decade. It must be kept in mind that the law firm lost more income than the objectant as a result of its decision that no legal fee had been earned. Here, the law firm did not breach the terms of the agreement between it and the objectant as one third of the legal fee earned in this matter, to wit, $0, is $0. It ill behooves the objectant to complain about this interpretation of their agreement when he knowingly and falsely represented in the agreement that the case was ready for inquest.
Unlike an attorney who is discharged without cause, an attorney who is discharged with cause for misconduct or other grounds is not entitled to any compensation for the services he rendered and, by operation of law, does not have a lien on the *423 recovery, notwithstanding that some of those services were of value (see Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 44 [1990]; Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454 [1989]; Matter of Montgomery, 272 NY 323, 326 [1936]). Furthermore, “[m]isconduct that occurs before an attorney’s discharge but is not discovered until after the discharge may serve as a basis for a fee forfeiture” (Coccia v Liotti, 70 AD3d 747, 757 [2010], quoting Orendick v Chiodo, 272 AD2d 901, 902 [2000]).
Here, notwithstanding that the objectant entered into an agreement with the law firm, he, in effect, is seeking a recovery against his former client as he requests payment from the settlement proceeds. Although the plaintiff appears not to have been aware of the objectant’s misconduct when the law firm replaced the objectant as counsel in this case and others, the objectant’s neglect of this case coupled with his filing of frivolous applications and false papers during the period he represented the plaintiff constitutes misconduct which serves as a basis to hold that the objectant forfeited any right to a fee (see Coccia v Liotti, 70 AD3d 747 [2010]; Orendick v Chiodo, 272 AD2d 901 [2000]).
The court recognizes that as a general rule attorneys should be compensated as provided in agreements. Furthermore, a client should not be unjustly enriched by receiving valuable legal services for free every time an attorney’s conduct fails to fully comply with a requirement (see Nabi v Sells, 70 AD3d 252 [2009]). Nonetheless, it is well established that courts have “inherent power to supervise the fees attorneys charge for legal services” (Matter of Stortecky v Mazzone, 85 NY2d 518, 525 [1995]). This appears to be a corollary to the rule that the court should supervise the conduct of all attorneys appearing before the court.
In this case, were any compensation awarded to the objectant, the court would be ignoring its obligation to supervise attorney’s fees and the conduct of attorneys. This is so because the object-ant, without any request by the client, and apparently without the client’s knowledge, sought to obtain a recovery and a percentage of that recovery as a legal fee based upon a strategy of delay, neglect, frivolous applications and the filing of papers known to contain an inaccurate statement that the answer is stricken. The court has the inherent power to deny compensation to an attorney where, as here, to do otherwise would reward the objectant for his own wrongful acts.
*424 Accordingly, this decision constitutes the order of the court, at the foot of the interim decree previously entered, dismissing the objections and directing the law firm to pay the sum held in escrow to the decedent’s son.